NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2722-15T2

H. JAMES RIPPON,

       Plaintiff-Appellant,

v.

LEROY SMIGEL, ESQ.,
SMIGEL, ANDERSON & SACKS,
and CAYLENE RIPPON,

       Defendants-Respondents.

> **APPROVED FOR PUBLICATION**
>
> **March 22, 2017**
>
> **APPELLATE DIVISION**

Argued March 13, 2017 — Decided March 22, 2017

Before Judges Nugent, Haas, and Currier.

On appeal from Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-455-15.

Adrienne C. Rogove argued the cause for appellant (Blank Rome, LLP, attorneys; Ms. Rogove and Ethan M. Simon, of counsel and on the brief).

Paul A. Carbon argued the cause for respondents Leroy Smigel, Esq. and Smigel, Anderson & Sacks (Margolis Edelstein, attorneys; Mr. Carbon, of counsel and on the brief; Sara E. Hoffman, on the brief).

Lisa M. Hardy argued the cause for respondent Caylene Rippon.

The opinion of the court was delivered by

HAAS, J.A.D.

Plaintiff H. James Rippon appeals from the January 20, 2016 Law Division order granting motions by defendants Leroy Smigel, Esq. ("Smigel"), Smigel's law firm, Smigel, Anderson & Sacks ("firm"), and Caylene Rippon[1] to dismiss plaintiff's complaint on jurisdictional and other grounds. After reviewing the record in light of the contentions advanced on appeal, we reverse and remand for further proceedings.

I.

We derive the following facts from the sparse record presented on appeal. During the relevant time periods involving the matters on appeal, Smigel and his firm represented Caylene in three separate actions against plaintiff that were pending in Pennsylvania: (1) a divorce proceeding filed by plaintiff against Caylene; (2) a petition Caylene filed against plaintiff to have him declared incompetent; and (3) a protection from abuse proceeding that Caylene instituted against plaintiff. All three proceedings were highly contentious. Pursuant to a May 23, 2012 order entered in Pennsylvania, plaintiff and Caylene were directed not to have any contact with each other.[2]

---

[1] Plaintiff H. James Rippon and his spouse, Caylene Rippon, share the same surname. To avoid confusion, we refer to H. James Rippon as "plaintiff" and to Caylene Rippon as "Caylene." In doing so, we intend no disrespect.

[2] By its express terms, this order expired on May 23, 2014.

(continued)

At the same time that Smigel and his firm were representing Caylene in these matters, plaintiff alleged that these two defendants were also representing a business that plaintiff and Caylene jointly owned and that in the course of that representation, they were improperly protecting only Caylene's interests.[3] On September 12, 2013, plaintiff filed suit against Smigel and his firm in Pennsylvania for breach of their fiduciary duty to him. Caylene was not a party to this litigation.

In the "background facts" section of plaintiff's complaint, he listed nine examples of instances where Smigel and his firm allegedly had taken "positions adverse to" him on behalf of Caylene. As one of these examples, plaintiff stated that "Smigel and his firm, on behalf of Caylene, have attempted to thwart the purchase of a property in Stone Harbor," New Jersey by plaintiff.[4]

On June 6, 2014, plaintiff and Caylene entered into an "Interim Joint Stipulation" in their divorce proceeding. Among

(continued)

[3] The business, which was named "KLE", owned motels in Pennsylvania and Maryland. Caylene effectively owned 51% of the business, with plaintiff owning 49.5%.

[4] No further explanation of this allegation is contained in the September 12, 2013 complaint.

other things, plaintiff agreed to convey all of his interest in KLE to Caylene. Plaintiff also agreed to "withdraw with prejudice" the lawsuit he had filed against Smigel and his firm for breach of fiduciary duty.[5] In return, Caylene agreed to withdraw her petition to have plaintiff declared incompetent and the protection from abuse proceeding she had previously instituted against him.

Under the terms of the stipulation, plaintiff was also required to transfer ownership of a house the parties owned in Stone Harbor to Caylene. Caylene had been living in this house, at least part-time, during the pendency of the parties' divorce action. However, Caylene allegedly used the Stone Harbor house as her primary residence after June 2014.

On September 16, 2015, plaintiff filed a five-count complaint in the Law Division, Cape May County, against Smigel, Smigel's firm, and Caylene for tortious interference with contractual relations (count one); interference with prospective contractual relations (count two); defamation (count three); and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1

---

[5] In accordance with this provision of the stipulation, on June 10, 2014, plaintiff filed a "praecipe" to withdraw the breach of fiduciary duty action he had filed against Smigel and his firm with prejudice. Although not a term used in New Jersey, a "praecipe" is defined at common law in Pennsylvania as a written motion or request seeking some court action. Black's Law Dictionary 1192 (7th ed. 1999).

to -20 (count four). In addition, plaintiff alleged in count five that Smigel had engaged in the unauthorized practice of law in New Jersey.

In his complaint, plaintiff asserted that on July 31, 2013, he entered into an agreement to purchase a property in Stone Harbor for himself. He paid a $500,000 deposit to the seller, which was a New Jersey limited liability company, and planned to finance the balance of the purchase price. The agreement did not contain a mortgage contingency.

However, the agreement was contingent upon plaintiff "be[ing] able to obtain title insurance on the [p]roperty from a title insurance company authorized to do business in the State of New Jersey." The agreement also provided that "in the event [b]uyer fails to close as set forth herein, the amount of damages sustained by [s]eller will be substantial but hard to calculate. Therefore, the parties agree that the deposit represents a fair and true calculation of damages and same shall be forfeited as set forth herein."

The complaint asserts that on September 19, 2013, seven days after plaintiff had filed his breach of fiduciary duty action in Pennsylvania against Smigel and his firm, Smigel faxed a letter on Caylene's behalf to RBS Citizens, N.A., of Providence, Rhode Island; Sturdy Savings Bank of Stone Harbor;

and Title Alliance of Cape May County, a Stone Harbor title

company. The letter stated:

> Please be advised that our firm represents Caylene Rippon in her divorce action against [plaintiff]. It has recently come to our attention that [plaintiff] is attempting to obtain a mortgage to finance a home in Stone Harbor, NJ. It is important that all the entities connected with this transaction be aware of the following:
>
> 1. There is currently pending in the Court of Common Pleas of Dauphin County, PA, an action for support against [plaintiff] which will drastically change the income that [plaintiff] listed in his loan documents. . . . [Plaintiff] indicates that his income is only $207,360 after taxes. (Please see the enclosed income statement submitted by [plaintiff]).
>
> 2. The funds being used to secure this mortgage and establish credit are marital assets in which [Caylene] has an equitable interest. Therefore, [Caylene] would have an equitable interest in the title of the house that [plaintiff] is attempting to purchase. Should [plaintiff] go default, [Caylene] will not be held liable and will seek to enforce her equitable interest. . . . There is also a Protection from Abuse action filed against [plaintiff] . . . This Order requires [plaintiff] to stay [100 feet] away from

A-2722-15T2

[Caylene] who resides in Stone Harbor, NJ.

3. [Caylene] objects to the use of the joint marital assets to secure the mortgage financed by Sturdy Savings Bank. It would further be noted that [Caylene] will use all equitable means at her disposal to protect the joint marital assets until the conclusion of the divorce.

We understand fully that it is possible that [plaintiff] did not disclose these items to you when attempting to secure his mortgage; however, you are now on notice and we urge you to take the appropriate action as [Caylene] will use all legal and equitable means at her disposal to protect the joint marital assets.

If you have any questions or comments, please do not hesitate to contact me.

In his September 16, 2015 complaint in the Law Division, plaintiff alleged that Smigel's statements on Caylene's behalf were "untrue" and defamatory. Plaintiff asserted that after the three companies received Smigel's letter, the banks refused to finance plaintiff's proposed purchase of the home and he was unable to obtain other financing. Plaintiff contacted the seller to advise that he could not purchase the home and the seller replied that it was going to keep the $500,000 deposit based on plaintiff's breach of the agreement. The seller later

agreed to return, and plaintiff agreed to accept, $250,000 of the deposit in order to settle the dispute.

Caylene responded to plaintiff's complaint by filing a motion to dismiss for failure to state a claim and for lack of jurisdiction. Smigel and his firm filed a motion to dismiss for failure to state a claim, lack of jurisdiction, and on grounds of forum non conveniens. Smigel and his firm also asserted that plaintiff's claims against them were barred by the doctrine of res judicata based upon plaintiff's prior voluntary dismissal of his breach of fiduciary duty complaint in Pennsylvania.

In support of Smigel and his firm's claim that New Jersey lacked jurisdiction over them, Smigel submitted a certification stating that: (1) his firm was "located in Pennsylvania and does not have any offices in New Jersey"; (2) he did not live in New Jersey and did not own any property in this state; (3) the firm did not advertise in New Jersey; and (4) the firm did "not regularly provide legal services or perform other transactions in New Jersey." (emphasis added).

Following oral argument, the trial judge rendered a written decision on January 20, 2016, dismissing plaintiff's complaint against all three defendants with prejudice.[6] With regard to the

---

[6] At the time of the decision, the parties had not yet conducted any discovery.

question of jurisdiction, the judge stated that Caylene was a New Jersey resident. Although the judge did not specifically make a finding that Caylene's resident status meant that New Jersey had jurisdiction over her, we have assumed he meant to do so for purposes of this opinion.

However, the trial judge found that New Jersey had "neither general nor personal jurisdiction" over Smigel or his firm. The judge found that

> [p]laintiff fail[ed] to satisfy minimum contacts for [d]efendants as the Smigel [d]efendants merely sent one piece of correspondence specific to proceedings in Pennsylvania to advise that [d]efendant's share of the Pennsylvania marital assets should not be considered as part of [p]laintiff's portion of a New Jersey property. The sole purpose of the letter was to maintain [d]efendant's position in the Pennsylvania litigation and had nothing to do with New Jersey.

Relying upon Smigel's certification, the judge also found that plaintiff had not established that Smigel and his firm maintained "continuous and systematic activities" in New Jersey and did not "regularly provide legal services" here.

The trial judge next found that plaintiff's claims against Caylene, Smigel, and Smigel's firm should be dismissed on grounds of forum non conveniens because "New Jersey [was] not the proper forum." In explaining this portion of his decision, the judge stated:

> [I]n the instant matter[,] [p]laintiff resides in Pennsylvania; did not file the pending action in his home forum; and New Jersey's public policy of providing a forum for its residents does not apply as plaintiff is not a resident. Although [Caylene] is a resident of New Jersey, the crux of the pending case is that the truth and accuracy of the statements set forth in the September 19, 2013 letter relate solely to the protection of the PFA Order and the marital assets, all of which relate to the Pennsylvania proceeding.

Finally, the trial judge determined that plaintiff's claims against Smigel and his firm were also barred by the doctrine of res judicata. In this regard, the judge found that plaintiff voluntarily dismissed with prejudice his breach of fiduciary relationship action in Pennsylvania against Smigel and his firm. Although plaintiff filed that action <u>before</u> Smigel sent the September 19, 2013 letter that is involved in this case, the judge concluded that the dismissal of the Pennsylvania proceeding acted as an adjudication of all of plaintiff's claims against Smigel and his firm. Therefore, the judge ruled that these claims were barred by the doctrine of res judicata.[7] This appeal followed.

---

[7] The judge did not address Caylene's, Smigel's, or Smigel's firm's contentions that plaintiff's complaint failed to state a claim upon which relief could be granted under <u>Rule</u> 4:6-2(e), including Smigel and his firm's assertions that plaintiff's claims were barred by the litigation privilege and the statute of limitations for defamation actions.

On appeal, plaintiff argues that the trial judge mistakenly dismissed his complaint for lack of jurisdiction; on the basis of forum non conveniens; and on res judicata grounds. For the following reasons, we conclude that the thin factual record developed by the parties at the time of the judge's decision was insufficient to support defendants' motions to dismiss on jurisdictional and forum non conveniens grounds, and that plaintiff's claims regarding his purchase of the Stone Harbor home were not barred by the doctrine of res judicata. Therefore, we reverse the January 20, 2016 order dismissing the complaint and remand for further proceedings.

A.

We turn first to the question of jurisdiction. A defendant may move to dismiss a complaint on the ground of "lack of jurisdiction over the person[.]" R. 4:6-2(b). Appellate review of a ruling on jurisdiction is plenary because the question of jurisdiction is a question of law. Mastondrea v. Occidental Hotels Mgmt., S.A., 391 N.J. Super. 261, 268 (App. Div. 2007). Our review is thus de novo, while our review of the "court's factual findings with respect to jurisdiction" is only to determine if those findings are supported by substantial, credible evidence in the record. Ibid.

When a defendant has maintained continuous and systematic activities in the forum state, the defendant is subject to the state's "general" jurisdiction on any matter, irrespective of its relation to the state. Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989). However, when the cause of action arises directly out of a defendant's contacts with the forum state, the state may exercise "specific" jurisdiction over a defendant who has "minimum contacts" with the state. Id. at 322.

A court's jurisdiction is "a mixed question of law and fact" that must be resolved at the outset, "before the matter may proceed . . . ." Citibank, N.A. v. Estate of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996). Presented with a motion to dismiss on the basis of lack of jurisdiction, a trial court must make findings of the "jurisdictional facts," because disputed "jurisdictional allegations cannot be accepted on their face . . . ." Id. at 531-32.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (citations omitted). However, "[i]f a plaintiff presents factual

allegations [suggesting] with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, [the] plaintiff's right to conduct jurisdictional discovery should be sustained." Ibid. (third alteration in original) (citation omitted). Generally, the record must support the existence of disputed or conflicting facts to warrant jurisdictional discovery. Reliance Nat'l Ins. Co. In Liquidation v. Dana Transp., 376 N.J. Super. 537, 551 (App. Div. 2005).

If the pleadings and certifications submitted to the trial court do not permit resolution of the jurisdictional question, the trial court must conduct a "preliminary evidential hearing after affording the parties an appropriate opportunity for discovery." Citibank, supra, 290 N.J. Super. at 532. When a motion to dismiss for lack of jurisdiction is made, it is only the jurisdictional allegations that are relevant, not the sufficiency of the allegations respecting the cause of action. Ibid.

New Jersey's "long-arm rule" permits personal jurisdiction to be established over nonresidents by service of a summons and complaint in whatever manner "due process of law" permits. R. 4:4-4(a)(6); Avdel Crop. v. Mecure, 58 N.J. 264, 268 (1971). Our courts "will allow out-of-state service to the uttermost

limits permitted by the United States Constitution." Ibid. A defendant must have sufficient contact with the forum state "to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellant has incurred there." Int'l Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S. Ct. 154, 160, 90 L. Ed. 95, 104 (1945).

The test for whether the defendant has created a "substantial connection" with the forum is whether the defendant "'deliberately' has engaged in significant activities within" the forum or has created "'continuing obligations' between himself and the residents of the forum," rather than contacts that are merely "'random,' 'fortuitous,' or 'attenuated' . . . ." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 2183-84, 85 L. Ed. 2d 528, 542-43 (1985) (citations omitted). There must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283, 1298 (1958).

The plaintiff "bears the burden of proof on the question of the adequacy of the . . . defendants' contacts to sustain an exercise of specific jurisdiction." Citibank, supra, 290 N.J.

Super. at 533. A court should only expect a prima facie showing of sufficient contacts "[i]n the early stages of a proceeding . . . ." Jacobs v. Walt Disney World Co., 309 N.J. Super. 443, 454 (1998). A conclusion of specific jurisdiction requires that the "purposeful acts by the [defendant] directed toward this State" be of a kind that "make[s] it reasonable for the [defendant] to anticipate being haled into court here." Mastondrea, supra, 391 N.J. Super. at 268.

Applying these standards, we are satisfied that the record in the present matter was not sufficiently developed for the trial judge to conclude, as he did, that Smigel and his firm were not subject to New Jersey's jurisdiction. The judge focused almost entirely on the question of whether New Jersey had "general" jurisdiction over Smigel and his firm, and did not adequately address the question of "specific" jurisdiction.

The trial judge incorrectly based his determination that New Jersey did not have general jurisdiction almost exclusively upon Smigel's certification in which he stated that he did not live in the State and that his firm did "not regularly provide legal services or perform other transactions in New Jersey." (emphasis added). However, Smigel did not define the term "regularly" in his certification. Thus, the certification can clearly be read as a concession that the firm is engaged in the

15

practice of law in New Jersey to some unexplained degree. In this regard, the certification is even silent as to whether Smigel or his firm represent New Jersey clients or whether he or his firm earn revenue from New Jersey clients and the amount of this revenue.[8] Smigel's and his firm's actual contacts with New Jersey needed to be disclosed on the record before a determination of general jurisdiction could reasonably be made.

Under these circumstances, we are satisfied that the matter was not ripe for determination at the time Smigel and his firm filed their motions to dismiss. Rather, plaintiff should have been granted an opportunity for jurisdictional discovery to explore the full involvement of Smigel and his firm in New Jersey before the matter was presented to the trial court for disposition. Although such discovery may ultimately result in a determination that New Jersey does not have general jurisdiction over Smigel and his firm, plaintiff should not have been deprived at this early juncture from attempting to establish a sufficient basis to proceed. Therefore, we are constrained to reverse and remand the determination that New Jersey lacked general jurisdiction over Smigel and his firm.

---

[8] The record contains a copy of a transcript in which an attorney associated with Smigel's firm appeared on Caylene's behalf, together with her attorney in this appeal, in an unrelated action in the Law Division, Cape May County. The judge did not address this representation in his opinion.

As noted above, the trial judge found that Caylene lived in Stone Harbor. Although the judge's written decision does not clearly state this, we have assumed that based upon his finding that Caylene was a resident of that municipality, the judge concluded that New Jersey had general jurisdiction over her. On remand, the parties may address this issue further in discovery if, contrary to the judge's implicit finding, there is a factual dispute as to Caylene's residence and New Jersey's resulting jurisdiction over her at the time plaintiff filed his complaint.[9]

Finally on this issue, we address the trial judge's conclusion that New Jersey did not have jurisdiction over Smigel and his firm because Smigel "merely sent one piece of correspondence" to the New Jersey companies concerning plaintiff's proposed purchase of a Stone Harbor property.[10] However, there is case law, not discussed in the judge's decision, stating that a non-resident defendant can be subject to this state's specific jurisdiction based on a single tortious act committed by the defendant in New Jersey. Jacobs, supra, 309 N.J. Super. at 461; See also Burger King, supra, 471 U.S. at

---

[9] In this regard, Caylene's attorney stated at oral argument that her client now lives in Florida.

[10] As noted above, the judge did not expressly address the question of New Jersey's "specific" jurisdiction over Smigel and his firm, but may have been attempting to do so by making this finding.

477 n.18, 105 S. Ct. at 2184 n.18, 85 L. Ed. 2d 543 n.18 (holding, contrary to the judge's conclusion, that a single tortious act can support jurisdiction if it creates a "substantial connection" with the forum).

Indeed, our Supreme Court addressed this issue in Lebel, where the plaintiff alleged, among other things, that the defendant, a Florida resident, acted fraudulently during negotiations regarding the sale of a boat via mail and telephone. Lebel, supra, 115 N.J. at 320—21, 326. Specifically, the defendant called the New Jersey plaintiff from Florida regarding the sale, sent the contract to the plaintiff in New Jersey, and received payment. Id. at 324—25.

The Court held that these were sufficient contacts with the forum state to establish jurisdiction and found it unnecessary to rely on the plaintiff's supplemental submission that "attempted to demonstrate that the defendant sought to penetrate the New Jersey market by advertising in media that generally circulated in New Jersey." Ibid. The Court also noted that the defendant in Lebel was aware of the direct consequences the sale would have in New Jersey and the possibility that litigation might arise in New Jersey. Id. at 328.

In so holding, the Lebel Court noted that "the mere transmittal of messages by mail or telephone within the state is

not the critical factor, it is the nature of the contact." <u>Id.</u> at 325 (citing <u>Baron & Co. v. Bank of N.J.</u>, 497 <u>F. Supp.</u> 534 (E.D. Pa. 1980)). "Where a defendant knowingly sends into a state a false statement, intending that it should then be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." <u>Id.</u> at 326 (quoting <u>Vishay Intertechnology, Inc. v. Delta Int'l Corp.</u>, 696 <u>F.2d</u> 1062, 1066 (4th Cir. 1982)). The Court also held that a state can exercise specific jurisdiction over a non-resident defendant if he "purposely directs [his] activities to the forum, and the litigation results from the alleged injuries that arise out of or relate to those activities." <u>Ibid.</u> (quoting <u>Hughes v. Balemaster, Inc.</u>, 652 <u>F. Supp.</u> 1350, 1351—52 (E.D. Mo. 1987)).

If new motions to dismiss or for summary judgment on jurisdictional grounds are filed after the conclusion of jurisdictional discovery on remand, the trial court should carefully consider these and other relevant precedents in determining whether New Jersey has specific jurisdiction over Smigel and his firm. The judge must also permit the parties to engage in discovery on this issue.

B.

We are also convinced that permitting the parties to engage in a period of discovery prior to considering their motions would have assisted the trial court in reviewing defendants' assertion that plaintiff's complaint should be dismissed on grounds of forum non conveniens. The doctrine of forum non conveniens is equitable in nature, and allows a court to decline jurisdiction where the "ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate." Kurzke v. Nissan Motor Corp., 164 N.J. 159, 164 (2000). On appeal, the judgment of the trial court should not be overturned unless a clear abuse of discretion is shown. Id. at 165.

For a forum non conveniens motion to succeed, a defendant must demonstrate that "serious inconvenience" would result if the case were tried in the plaintiff's chosen forum. Am. Home Prod. Corp. v. Adriatic Ins. Co., 286 N.J. Super. 24, 34 (App. Div. 1995). The defendant must also show that transferring the case to a different forum will not result in undue hardship to the plaintiff. Ibid. However, a court must do more than "merely balance the conveniences." Ibid.

Generally, a court with jurisdiction over a case will honor a plaintiff's choice of forum. Yousef v. Gen. Dynamics Corp., 205 N.J. 543, 557 (2011). This presumption is especially strong

20                                    A-2722-15T2

where the plaintiff is a resident in the forum state. Ibid. Nevertheless, the plaintiff's forum selection is not dispositive; rather, a court should determine "whether the ends of justice will be furthered by trying a case in one forum or another[.]" Ibid. Ultimately, dismissal on forum non conveniens grounds is not proper unless the plaintiff's choice is "demonstrably inappropriate." Ibid. (quoting Kurzke, supra, 164 N.J. at 172).

The first step in a forum non conveniens inquiry is to determine whether there is an adequate alternative forum for the case. Varo v. Owens-Illinois, Inc., 400 N.J. Super. 508, 519 (App. Div. 2008). An adequate forum is one where the defendant is amenable to service of process, and where the subject matter of the dispute may be litigated. Id. at 520.

Next, there are public and private interest factors a court must consider. The private interest factors are:

> (1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) whether a view of the premises is appropriate to the action and (4) all other practical problems that make trial of the case "easy, expeditious and inexpensive," including the enforceability of the ultimate judgment.
>
> [Aguerre v. Schering-Plough Corp., 393 N.J. Super. 459, 474 (App. Div. 2007), (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501,

508, 67 <u>S. Ct.</u> 839, 843, 91 <u>L. Ed.</u> 1055, 1062 (1947)), <u>certif. denied</u>, 193 <u>N.J.</u> 293 (2007).]

The public interest factors are:

(1) the administrative difficulties which follow from having litigation "pile up in congested centers" rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial and (4) the local interest "in having localized controversies decided at home."

[<u>Ibid.</u> (quoting <u>Gulf Oil</u>, <u>supra</u>, 330 <u>U.S.</u> at 508-509, 67 <u>S. Ct.</u> at 843, 91 <u>L. Ed.</u> at 1062-63).]

In general, the treatment of the factors is meant to be qualitative rather than quantitative. <u>Camden Iron & Metal, Inc. v. Klehr, Harrison, Harvey, Branzberg & Ellers, LLP</u>, 384 <u>N.J. Super.</u> 172, 180 (App. Div. 2006), <u>certif. denied</u>, 187 <u>N.J.</u> 83 (2006).

Here, the trial judge did not specifically consider these principles in determining that New Jersey was an inconvenient forum for Caylene, Smigel, and Smigel's firm. The judge also did not make sufficient findings supporting his decision as required by <u>Rule</u> 1:7-4(a). Such findings are critical in a fact-sensitive forum non conveniens case, especially one where the property plaintiff sought to buy was in New Jersey; Smigel

sent the September 19, 2013 letter to financial institutions located in New Jersey; one of the defendants, Caylene, lived in New Jersey; and the other defendants, Smigel and his firm, were based in an adjoining state and, by Smigel's own admission, did at least some business in New Jersey. Without sufficient findings, it is difficult to conclude on this meager record that New Jersey was not a proper forum for the resolution of plaintiff's claims.

The trial judge's mistake was likely caused by the fact that at this very early stage of the proceedings, the record had not been sufficiently developed to permit the judge to fulfill his fact-finding obligation. Our Supreme Court has long recognized that a decision on forum non conveniens grounds is "enhanced" when it is "reserved until discovery has proceeded sufficiently to enable the [trial] court to make a better-informed assessment of the private- and public-interests." D'Agostino v. Johnson & Johnson, Inc., 115 N.J. 491, 494 n.1 (1989). "Although the factors set forth in Gulf Oil are of central importance, pre-discovery is ordinarily an inappropriate point in the litigation at which to consider them." Kurzke, supra, 164 N.J. at 172.

Thus, the Court has said that "[a]s a general rule, a motion for dismissal due to forum non conveniens should not be

heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by the plaintiff." Id. at 168. Therefore, we reverse the trial court's decision to dismiss plaintiff's complaint against all of the defendants on grounds of forum non conveniens. On remand, the parties shall conduct further discovery on this issue prior to presenting arguments concerning forum non conveniens to the court as part of any future motion practice.

C.

Finally, we do not agree with the trial court's conclusion that because plaintiff voluntarily withdrew in Pennsylvania his breach of fiduciary duty complaint with prejudice against Smigel and his firm, he was barred by the doctrine of res judicata from filing his present complaint concerning the September 19, 2013 letter.

As our Supreme Court explained in Velasquez v. Franz, 123 N.J. 498 (1991):

> [t]he rationale underlying res judicata recognizes that fairness to the defendant and sound judicial administration require a definite end to litigation. The doctrine evolved in response to the specific policy concerns of providing finality and repose for the litigating parties; avoiding the burdens of relitigation for the parties and

24

> the court, and maintaining judicial integrity by minimizing the possibility of inconsistent decisions regarding the same matter.
>
> [_Id._ at 505 (citations omitted).]

There are three basic elements to res judicata: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. _Id._ at 505-06.

The first and third elements were not met in this case.[11] The praecipe that plaintiff filed was not an adjudication by a court on the merits of his breach of fiduciary duty claim against Smigel and his firm. Plaintiff simply withdrew that action as part of a stipulation that plaintiff and Caylene entered in their divorce action. Nothing in the stipulation stated that plaintiff was barred from instituting a new proceeding against Smigel, his firm, and Caylene concerning his attempt to purchase a home in Stone Harbor. Certainly, the

---

[11] With regard to the second element of the res judicata test, only Smigel and his firm were named in the Pennsylvania action; Caylene was not. Although the trial judge did not specifically find that his ruling on res judicata only applied to Smigel and his firm, we have assumed that this is the case since Caylene was not involved as a party in the breach of fiduciary duty action. Therefore, this portion of the test appears to have been met with regard to Smigel and his firm.

praecipe cannot be considered as a decision or judgment by a court on the merits of this claim.

The third res judicata element was also not met. For the doctrine to apply, the causes of action must arise from a single claim.

> [C]auses of action are deemed part of a single "claim" if they arise out of the same transaction or occurrence. If, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action. Otherwise, theories not raised will be precluded in a later action.
>
> [McNeil v. Legislative Apportionment Comm'n, 177 N.J. 364, 395 (2003).]

Here, plaintiff filed suit against defendant for tortious interference with contractual relations for a letter sent on September 19, 2013, which was one week after he filed his previous complaint for a breach of fiduciary duty. Thus, this letter, which serves as the basis of plaintiff's second complaint, did not even exist until after the first complaint was filed.

As the United States Supreme Court has recently held, "res judicata does not bar claims that are predicated on events that postdate the filing of the initial complaint." Whole Woman's Health v. Hellerstedt, ___ U.S. ___, 136 S. Ct. 2292, 2305, 195 L. Ed. 2d 665, 680, (2016) (citing Morgan v. Covington, 648 F.3d

172, 178 (3d Cir. 2011)). Thus, in accordance with the reasoning in <u>Hellerstedt</u>, plaintiff's claims concerning Smigel's September 19, 2013 letter did not arise out of the same transaction or occurrence involved in the Pennsylvania action, which pre-dated Smigel's letter. Therefore, the trial court mistakenly dismissed plaintiff's complaint against Smigel and his firm based on the doctrine of res judicata.

D.

In sum, plaintiff's claims against defendant were not barred by the doctrine of res judicata. In addition, we conclude that the trial court prematurely decided the questions of jurisdiction and forum non conveniens before an adequate record was developed through the exchange of discovery on these legally-complex and fact-sensitive issues. Nothing within this opinion forecasts any views on the merits of plaintiff's claims against the three defendants nor on the question of whether defendants may be entitled to prevail on these issues after a fuller record is developed and presented to the trial court. We say no more than that the issues were not fully ripe for decision.

The January 20, 2016 order is reversed and the matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2722-15T2