**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3081-21

LAWRENCE J. MILLS, a/k/a
JUSTIN MILLS, and DANIEL
CHUN,

     Plaintiffs-Appellants,

v.

GOLDEN NUGGET ONLINE
GAMING, INC.,

     Defendant-Respondent.

_____

Submitted October 2, 2023 – Decided December 8, 2023

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0025-22.

Lawrence J. Mills appellant pro se, on the joint brief.

Daniel Chun appellant pro se, on the joint brief.

Yankwitt LLP, attorney for respondent (George Cheesman Godfrey III, Esq., of counsel and on the brief).

PER CURIAM

Plaintiffs, Lawrence Mills (Mills) and Daniel Chun (Chun), appeal the Law Division's May 23, 2022, order dismissing their complaint against Golden Nugget Online Gaming, Inc. (GNOG or defendant) with prejudice and argue the trial court erred when it found plaintiffs failed to state a claim upon which relief could be granted pursuant to Rule 4:6-2(e) because res judicata, collateral estoppel, and the entire controversy doctrine barred their complaint. Mills also claims the trial court erred in finding he lacked standing to bring a claim against defendant.

We agree with the trial court's finding Mills lacks standing to bring a claim. We disagree with the trial court's conclusion that res judicata, collateral estoppel, or the entire controversy doctrine apply to bar Chun's sole claim of conversion. We also hold the court erred in dismissing the complaint with prejudice. However, we conclude Chun's complaint for conversion fails to state a claim upon which relief may be granted pursuant to Rule 4:6-2(e). The dismissal of the pleading is affirmed, but without prejudice as to Chun. We remand this matter to the trial court for entry of a conforming order.

I.

A-3081-21

We glean the following facts from the record: on November 2, 2017, Chun opened an online gaming account through GNOG using $1,000 given to him by Mills. Mills gave Chun the money in exchange for the oral promise they would split any winnings resulting from gambling the $1,000. Chun deposited the money in cash at Golden Nugget Atlantic City Casino, owned by Golden Nugget Atlantic City LLC (GNAC) and opened an online gaming account (the account).

Pursuant to the account's terms and conditions, defendant was permitted to place a hold on an account for security review, block a user's account, or terminate a user's account under certain circumstances. These terms are in addition to statutes and regulations imposed upon online gaming accounts by the State of New Jersey.

The same day Chun deposited the money, defendant placed a hold on the account for security-related reasons. Chun attempted to immediately withdraw the money but was prohibited due to the hold on the account. Plaintiffs filed suit against GNAC[1] in Federal District Court for the District of New Jersey and alleged, among other things, conversion of the money deposited in the account

---

[1] It is unclear whether defendant, GNOG, was a party to that lawsuit.

A-3081-21

(the Federal Action).[2] The Federal Action was filed on October 31, 2019. Defendant claims it sent Chun an email on October 25, 2019, stating the account would be terminated due to account inactivity and the money would be deemed forfeited if Chun did not log into the account within the next thirty days. It is undisputed Chun did not log into his account within the thirty-day period. Defendant terminated the account and deemed the money forfeited on December 2, 2019.

The District Court granted summary judgment to GNAC and dismissed plaintiffs' complaint on August 18, 2021. The District Court found the temporary hold GNAC placed on Chun's account was valid pursuant to the terms and conditions of the contractual agreement between it and Chun.

On September 27, 2021, after the Federal Action was dismissed, Chun contacted GNOG's support team to withdraw the money. Counsel for GNAC in the Federal Action informed Chun the money was deemed forfeited on

---

[2] The casino was not named as a party to this action, but we understand it was a party to the related Federal Action. These facts are taken from the parties' briefs because both parties have failed to supply the online gaming contract at issue. The opinion disposing of the Federal Action is not part of the record. We denied plaintiffs' motion to supplement the record with the opinion disposing of the Federal Action.

December 2, 2019 "[p]ursuant to NJ Regulations and the Terms and Conditions of the Agreement with GNOG . . . ."

Plaintiffs filed this complaint in the Law Division asserting one count of conversion three months later, on December 31, 2021.  GNOG moved to dismiss plaintiffs' complaint on four grounds: (1) the taking of plaintiffs' $1,000 was not wrongful; and (2) res judicata, (3) collateral estoppel, and (4) the entire controversy doctrine each barred the present case.  Defendant also moved to dismiss Mills for a lack of standing.

The trial court granted GNOG's motion to dismiss with prejudice and found for defendant on each of the five issues raised in its motion.  This appeal followed.

II.

Standing.

We review the issue of Mill's standing first, as it is a threshold determination we review de novo on appeal.  Cherokee LCP Land, LLC v. City of Linden Planning Bd., 234 N.J. 403, 414 (2018).  No deference is afforded to the trial court's conclusions.  Ibid.

We review de novo the trial court's dismissal of a complaint pursuant to Rule 4:6-2(e), applying the same standard as the trial court.  Dimitrakopoulos v.

5

Borrus, Goldin, Foley, Vignuolo, Hyman, & Stahl, P.C., 237 N.J. 91, 108 (2019). Our role is limited to reviewing "the pleadings themselves," id. at 107 (quoting Roa v. Roa, 200 N.J. 555, 562 (2010)), to ascertain "the legal sufficiency of the facts alleged," (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 736, 746 (1989)).

Our review is performed "with a generous and hospitable approach." Ibid. (quoting Printing Mart-Morristown, 116 N.J. at 746). The plaintiff is entitled to every reasonable factual inference to determine whether a cause of action exists in the complaint. Ibid. We are not concerned at this stage of the litigation whether the claim will be successful. Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 16 (App. Div. 2022) (quoting Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (App. Div. 2001)). A dismissal of a complaint pursuant Rule 4:6-2(e) is generally made without prejudice, Nostrame v. Santiago, 213 N.J. 109, 128 (2013), unless any future amendment is patently insufficient to support a claim, Mac Prop. Grp., 473 N.J. Super. at 17.

Plaintiffs argue Mills retained a property interest in the money, conferring standing upon him to bring a claim for conversion. Standing is governed by Rule 4:26-1. EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 339 (App. Div. 2015). The rule permits "[e]very action [to] be prosecuted

in the name of the real party in interest . . . ." <u>R.</u> 4:26-1. The relationship between Chun and defendant is governed by the rules of contract. In that setting, an individual generally only has standing to pursue a breach of contract claim if they are party to the contract. <u>Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.</u>, 376 N.J. Super. 48, 61 (App. Div. 2005). Mills was never a party to the contractual relationship between Chun and defendant, and the most generous reading of the pleadings fails to confer upon GNOG any contractual duty or benefit owed to Mills. Therefore, Mills has no standing to sue GNOG. At best, perhaps Mills has standing to sue Chun as a third-party plaintiff, pursuant to the alleged oral promise between Mills and Chun, for return of the funds if Chun is successful in obtaining reimbursement from GNOG. We see no reason to disturb the trial court's order in this respect and affirm the dismissal of Mill's complaint, with prejudice.

III.

<u>The Conversion Claim</u>.

Conversion is the "[(1)] wrongful exercise of dominion and control over property [(2)] owned by another [(3)] inconsistent with the owners' rights." <u>Sun Coast Merch. Corp. v. Myron Corp.</u>, 393 N.J. Super. 55, 84 (App. Div. 2007)

7

(quoting Port-O-San Corp. v. Teamsters Loc. U. No. 863 Welfare & Pension Funds, 363 N.J. Super. 431, 440 (App. Div. 2003)).

When Chun opened the account and deposited the money therein, the parties agreed to abide by the account's terms and conditions. Among those terms was section 4.8, which states:

> After 365 days of account inactivity (meaning no actual wagering, game play, deposit or withdrawal), you will be informed via email that you have been inactive and whether or not you have any remaining funds in the account. You hereby acknowledge that, if your account remains dormant for more than 365 days, we have the right to close the account and any funds remaining in the account shall be forfeited.

This section complies with N.J.S.A. 5:12-95.24, which requires "[a]ll amounts remaining in [dormant] Internet gaming accounts . . . under such conditions as established by regulation by [the New Jersey Division of Gaming Enforcement] shall be paid 50% to the casino licensee and 50% to the casino control fund." The statute requires GNOG attempt contact with the account owner via mail, phone, or computer. An account is dormant if there is no activity for one year. N.J.A.C. 13:690-1.1. At the time the account was opened, defendant was required to include in the terms and conditions "[n]otification that if the patron's internet gaming account remains dormant for a period of one year any funds

remaining on deposit and any pending wagers shall be forfeited." N.J.A.C. 13:690-1.2(1)(8) (amended Jan. 2018).[3]

On appeal, there is no dispute Chun demanded return of the money and defendant refused to return it. The issue is whether defendant's refusal was inconsistent with Chun's contractual rights. Chun does not dispute he agreed to the terms and conditions associated with the account. Nor does he dispute GNOG had the authority to terminate the account pursuant to the terms and conditions and pursuant to New Jersey law.

In his arguments to the trial court and to us, Chun claims he never received the required notice. The complaint does not allege Chun did not receive the December email notifying him his account would be terminated for inactivity. Nothing in the complaint disputes the receipt of the December 2019 email or the validity of the email account Chun used when opening the account.

The complaint instead disputes the account was dormant because it was "the subject of active litigation," without citation to any statute or caselaw. Because the complaint does not allege any actions which could be considered activity by either section 4.8 of the terms and conditions (wagering, game play,

---

[3] The regulation was changed to require merely a "[f]ull explanation of all rules applicable to dormant Internet gaming accounts." N.J.A.C. 13:69O-1.2(l)(8).

deposit, or withdrawal) or N.J.A.C. 13:690-1.1 (the broader "patron initiated activity") there is no wrongful conduct alleged to justify a claim of conversion and the trial court was correct to dismiss the conversion claim. Chun's rights are governed by the agreed contractual terms and conditions or applicable laws and regulations.

However, because a grant of dismissal is usually without prejudice, Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 286-87 (App. Div. 2014), Chun should have been given an opportunity to amend his complaint to plead any contractual claim, assuming jurisdiction and venue is properly laid pursuant to the online gaming contract.

IV.

Res Judicata, Collateral Estoppel, and The Entire Controversy Doctrine.

We part company with the trial court in finding Chun's claims are barred by res judicata, collateral estoppel, or the entire controversy doctrine. It is our understanding, without the benefit of any of the pleadings in the Federal Action, the conversion claim in the Federal Action was predicated upon the initial temporary hold of the funds in the account, whereas the present suit is based upon GNOG's later refusal to return the money after the account was terminated for inactivity. According to plaintiffs, the current lawsuit "has nothing to do

with [the] initial hold placed on [the] account which was the basis for the [Federal Action]." Because Chun disputes the permanent seizure of the money "which occurred on November 3, 2021, [this case] is not the same as the temporary and lawful hold on the funds which occurred on November 2, 2017." Further, because defendant did not refuse to return the money until after the Federal Action concluded, Chun could not bring his claim while the Federal Action was ongoing, thus foreclosing the application of the entire controversy doctrine.

The doctrine of res judicata precludes the re-litigation of substantially the same cause of action once it is finally determined on the merits by a court of competent jurisdiction. Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 606 (2015). Collateral estoppel is a subset of res judicata, In re Liquidation of Integrity Ins. Co./Celotex Asbestos Tr., 214 N.J. 51, 66 (2013) (quoting Div. of Youth & Fam. Servs. v. R.D., 207 N.J. 88, 114 (2011)), and precludes the re-litigation of issues actually determined in the previous action between the same or similar parties, but involving a different cause of action, R.D., 207 N.J. at 115 (quoting State v. Gonzalez, 75 N.J. 181, 186 (1977)). Similarly, the entire controversy doctrine—codified at Rule 4:30A—"stems directly from the principles underlying the

doctrine of res judicata . . . ." Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (quoting Prevratil v. Mohr, 145 N.J. 180, 187 (1996)).

To invoke res judicata, there must be (1) a final judgment on the merits; (2) the same parties, or parties in privity with those of the prior suit; and (3) the same or substantially similar claims arising from the same transaction or occurrence. N.J. Div. of Child Prot. & Permanency v. J.Y., 467 N.J. Super. 235, 244 (App. Div. 2021); Rippon v. Smigel, 449 N.J. Super. 344, 367-68 (App. Div. 2017).[4] "[R]es judicata does not bar claims that are predicated on events that postdate the filing of the initial complaint." Rippon, 449 N.J. Super. at 368 (quoting Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292, 2305 (2016) abrogated by Dobbs v. Jackson Women's Health Org., 597 U.S. ___, 142 S. Ct. 2228 (2022)). Likewise, "a prior judgment does not preclude new claims based on acts occurring after the time of the first judgment." Hellerstedt, 136 S. Ct. at 2335 (Alito, J. dissenting).

---

[4] The requirements for collateral estoppel are substantially similar: (1) identical issues, (2) actually litigated in the prior proceeding, (3) by a court which issued a final judgment on the merits, (4) where the determination was essential to the prior judgment, with (5) identical parties or parties in privity to those in the prior proceeding. Adelman v. BSI Fin. Servs., Inc., 453 N.J. Super. 31, 40 (App. Div. 2018) (quoting Allen v. V & A Bros., Inc., 208 N.J. 114, 137 (2011)).

A-3081-21

Privity exists when there is a legal connection between the parties. Rutgers Cas. Ins. Co. v. Dickerson, 215 N.J. Super. 116, 122 (App. Div. 1987). Put differently, privity is present when one party is, in essence, the representative of the non-party or controlled the prior litigation. O'Brien v. Telcordia Techs., Inc., 420 N.J. Super. 256, 269 (App. Div. 2011) (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 338-39 (1996)); State v. K.P.S., 221 N.J. 226, 277-78 (2015) (using the same test for collateral estoppel).

Similarly, the primary consideration for the entire controversy doctrine is whether the claims against the parties are rooted in the same transaction or occurrence. Wadeer, 220 N.J. at 605. It does not "bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." Higgins v. Thurber, 413 N.J. Super. 1, 12 (App. Div. 2010) (quoting Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323 (1995)).

Contrary to the trial court's findings, the record before us does not suggest res judicata, collateral estoppel, or the entire controversy doctrine apply based on the complaint's allegations. Plaintiff mentions the prior Federal Action, but states GNAC was dismissed because it removed the temporary hold on the account and made the funds available for Chun to withdraw. GNAC is not a

13

party to this action and defendant permanently refused to return the money only after the Federal Action concluded.

There was no basis to dismiss the complaint pursuant to res judicata, collateral estoppel, or the entire controversy doctrine based on any of the complaint's allegations. We agree with the trial court's finding Mills lacks standing to bring a claim against GNOG. We also agree Chun's complaint for conversion fails to state a claim upon which relief may be granted pursuant to Rule 4:6-2(e) but we conclude the court erred in dismissing the complaint with prejudice to Chun's ability to bring an action sounding in contract, assuming jurisdiction and venue is proper. The dismissal of the complaint is affirmed, but without prejudice as to Chun. We remand this matter to the trial court for entry of a conforming order.

Affirmed in part, reversed in part, and remanded for a conforming order. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION