**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2604-24

RICKIE LLAUGER,

    Plaintiff-Appellant,

v.

KLEIN PRODUCTS INC., MIKE
ZYNDORF EQUIPMENT, LLC,
BROOKSIDE EQUIPMENT SALES
INC., AHERN RENTALS INC., and
KLEIN PRODUCTS OF KANSAS,
INC.,

    Defendants,

and

KLEIN-NIECE OF KANSAS, INC.,
NIECE PRODUCTS OF KANSAS,
INC., and NIECE EQUIPMENT LP,

    Defendants-Respondents.

_____

MIKE ZYNDORF, LLC,

    Third-Party Plaintiffs,

v.

PETILLO, INC.,

    Third-Party Defendants.

_____

Argued October 15, 2025 – Decided December 26, 2025

Before Judges Susswein and Augostini.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0642-22.

Daniel Bevere argued the cause for appellant (Piro Zinna Cifelli Paris & Genitempo, LLC, and Law Office of Craig M. Rothenberg, attorneys; Craig M. Rothenberg, of counsel; Tracey S. Bauer, on the briefs).

James D. Burger argued the cause for respondents (White and Williams LLP, attorneys; James D. Burger and Marc L. Penchansky, on the brief).

PER CURIAM

By leave granted, plaintiff Rickie Llauger appeals from a March 14, 2025 order dismissing all claims against defendants Klein-Niece of Kansas, Inc., Niece Products of Kansas, Inc., and Niece Equipment, LP., (collectively the Niece defendants) for lack of personal jurisdiction. After reviewing the record and governing law, we reverse and remand for further proceedings.

I.

A.

2

We glean the pertinent facts from the motion record. Plaintiff, a heavy equipment mechanic, was injured in 2020 while servicing a water tower located in Flanders. In 2022, plaintiff filed a complaint, which he amended four times, alleging that the water tower was "not reasonably fit, suitable, or safe for its intended purpose" for various reasons, including a defect in design, in violation of New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 to -11.

In 2012, Klein Products of Kansas, Inc. sold their business to Klein-Niece Products of Kansas, Inc.—both Kansas corporations—by entering an Asset Purchase Agreement. A few months later, Klein-Niece Products, Inc. changed its name to Niece Products of Kansas, Inc. Niece Equipment sells and leases the equipment manufactured by Niece Products of Kansas.

The agreement provided that Niece Products of Kansas, Inc. would assume certain liabilities of the business. Attached to the agreement was a list of specific liabilities and obligations "assumed by buyer." The water tower was not listed as a liability in the agreement.

Plaintiff's initial complaint alleged claims against defendants Michael Zyndorf Equipment, LLC, the former owner of the water tower, and "Klein

A-2604-24

Products, Inc.,"[1] who was alleged to have "designed, manufactured, assembled, created, tested, inspected, produced, labeled, packaged, marketed, promoted, imported, distributed, and/or sold" the water tower. During discovery, plaintiff discovered that Klein Products of Kansas, Inc. (n/k/a Niece Products of Kansas, Inc.) manufactured the water tower in June 2007.

Shortly after it was manufactured, the water tower was purchased by Ahern Heavy Equipment for approximately $30,000 and was shipped to New Mexico. Ahern, the registered owner of the water tower, had a Nevada business address.

Ahern owned the water tower until 2017 when it sold it to defendant Brookside Equipment Sales, Inc., a Massachusetts corporation. Brookside consigned the product to Zyndorf, who sold it in 2020 to plaintiff's employer, third-party defendant Petillo, Inc., a New Jersey corporation. The tower remained in Flanders, where plaintiff's injuries occurred.

---

[1] Klein Products Inc., a California corporation, claims it had no involvement with the water tower referenced in the underlying lawsuit. In this appeal, no timely reply brief was filed on their behalf; therefore, by order issued on August 13, 2025, Klein Products Inc.'s brief was suppressed.

4

B.

On July 14, 2023, the Niece defendants moved to dismiss the complaint for lack of personal jurisdiction. On August 15, 2023, the first trial court denied the motion without prejudice, and by consent, jurisdictional discovery was permitted until October 15, 2023.

In December 2023, the Niece defendants renewed their motion to dismiss on jurisdictional grounds, and plaintiff cross-moved to compel discovery, alleging that the Niece defendants' discovery responses were deficient. On January 19, 2024, the first trial court again denied the Niece defendants' motion to dismiss without prejudice and ordered more complete answers to jurisdictional discovery, stating:

> Defendants must identify the information and/or discovery that is being withheld in a sufficiently detailed privilege log in order to permit the other party, and if necessary, the [c]ourt to determine whether the information is discoverable.

The court extended jurisdictional discovery for an additional ninety days. On the same date, the court granted plaintiff leave to amend their complaint again, this time to name Niece Equipment as a defendant. As a result of jurisdictional discovery, plaintiff alleged overlapping ownership, personnel, and operational activities between Niece Products of Kansas, Inc. and Niece Equipment,

A-2604-24

asserting that the two entities function as alter egos, further linking them to New Jersey.

The April 16, 2024 case management order extended jurisdictional discovery to May 31, 2024. The Niece defendants moved for a third time to dismiss plaintiff's complaint. On February 11, 2025, the first trial court again denied without prejudice the Niece defendants' motion to dismiss the amended complaint as procedurally deficient. Immediately thereafter, the Niece defendants refiled the motion.

On March 14, 2025, the second trial court heard oral argument on the motion to dismiss. On the same day, the court dismissed plaintiff's fourth amended complaint against the Niece defendants on jurisdictional grounds. According to the trial court, discovery was not scheduled to end on August 27, 2025. Nonetheless, the court dismissed the complaint approximately five months before the close of discovery.

Particularly relevant to the issue before us and as revealed during discovery, Niece Equipment sold or leased equipment to "middlemen" equipment dealers, such as John Deere, Volvo, Caterpillar, and Komatsu, who in turn resold or leased the equipment. Plaintiff contends these dealers or distributors have a national presence with locations in New Jersey. However,

6

plaintiff asserts that defendants did not provide the requested identity of these dealers and distributors in discovery. Plaintiff further contends that the Niece defendants objected to providing any information about the dealers and distributors who purchased or leased Niece or Klein equipment, which arguably could have led to the discovery of additional information about the sale of Niece products in New Jersey.

In granting defendants' motion to dismiss, the second trial court addressed the demands for information regarding these "middlemen" equipment dealers, stating:

> According to plaintiff, while the Niece defendants have refused to respond to plaintiff's demands for information identifying customer-dealers and the revenue generated from same, testimony from [Niece Equipment] former sales representative, Johnny Rainey, indicates that 'Niece sold on average between [thirty] and [fifty] water towers annually, and that [eighty percent] of equipment sales were to customer-dealers. Plaintiff surmises, then that in the eight years between [Niece Products of Kansas's] acquisition of Klein and the date of plaintiff's accident, the Niece defendant had sold approximately [two hundred] water towers to customer-dealers. Plaintiff thus asks the court to assume that [the] Niece defendants' products, e.g., water towers, have found their way to New Jersey 'through sales to regional and national distributors who then resell or lease Niece products to New Jersey end users.'

The court further reasoned:

A-2604-24

If the court were to accept these assumptions as true, then the court would be satisfied that the stream of commerce analysis described above triggers personal jurisdiction such that the Niece defendants would have established sufficient contacts and purposeful availment via indirect sales to customer-dealers doing business in New Jersey. However, the court is not inclined to accept these assumptions as true. Without any definitive information regarding the Niece defendants' customer-dealers, it is far too speculative for the court to conclude that the Niece defendants should expect to be hauled into a New Jersey court on the basis of their sales to customer-dealers who rent and sell equipment in New Jersey.

Although the discovery end date was five months away, the court dismissed the complaint with prejudice for lack of personal jurisdiction against the Niece defendants, concluding that plaintiff's evidence failed to establish sufficient contacts between the Niece defendants and New Jersey as it pertained to the water tower.

On appeal, plaintiff contends that there were sufficient contacts related to this matter to subject the Niece defendants to specific jurisdiction in New Jersey, and therefore, the court erred in dismissing plaintiff's complaint for lack of personal jurisdiction. Plaintiff asserts that specific personal jurisdiction over the Niece defendants is established through the "stream of commerce theory," or alternatively, based on "successor jurisdiction." Plaintiff further contends that to the extent the second trial court believed the record was deficient

8

concerning the Niece defendants' customer-dealers, jurisdictional discovery should have been ordered.

Defendants counter with several arguments:  (1) simply because the water tower may have been placed in the stream of commerce and ultimately arrived in New Jersey is insufficient to establish personal jurisdiction; (2) plaintiff's cause of action does not arise from or relate to the Niece defendants' New Jersey contacts; (3) plaintiff cannot establish personal jurisdiction based on successor liability; (4) Niece Equipment and Niece Products are separate companies and plaintiff cannot establish an interconnectedness; and (5) the second trial court did not abuse its discretion by not extending jurisdictional discovery.

## II.

We review "de novo a trial court's legal determinations regarding personal jurisdiction."  D.T. v. Archdiocese of Phila., 260 N.J. 27, 41 (2025) (citing Rippon v. Smigel, 449 N.J. Super. 344, 358 (App. Div. 2017)).  Our review of the "court's factual findings with respect to jurisdiction[,] is limited to determining whether those findings are supported by substantial, credible evidence in the record."  Ibid. (internal citations and quotation marks omitted).

"When a nonresident defendant challenges personal jurisdiction, [] plaintiff bears the burden to demonstrate that the exercise of personal

9

jurisdiction over that defendant would comport with due process principles." Id. at 42 (internal citations omitted). Consistent with U.S. Supreme Court jurisprudence, New Jersey recognizes "two forms of personal jurisdiction over nonresident defendants: general jurisdiction and specific jurisdiction." Ibid. (citing Daimler AG v. Bauman, 571 U.S. 117, 127 (2014); Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322 (1989)). Plaintiff does not assert general jurisdiction; rather, it maintains that New Jersey has specific jurisdiction over these defendants.

"Specific jurisdiction 'covers defendants less intimately connected with a State, but only as to a narrower class of claims.'" Id. at 43 (quoting Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021)). "The minimum contacts required to establish specific jurisdiction" is referred to more often by the term "purposeful availment." Ibid. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Specific jurisdiction requires a defendant to "take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" Ibid. (alteration in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). The "purposeful availment" requirement exists in order to prevent an out-of-state defendant from being "haled into court based on 'random, fortuitous, or

attenuated contacts or as a result of the unilateral activity of some other party.'" Baanyan Software Servs., Inc. v. Kuncha, 433 N.J. Super. 466, 475 (App. Div. 2013).

Furthermore, the lawsuit "must arise out of or relate to the defendant's contacts with the forum." Doe 70 v. Diocese of Metuchen, 477 N.J. super. 270, 281 (App. Div. 2023) (internal quotation marks and alterations omitted) (quoting Jardim v. Overley, 461 N.J. Super. 367, 376 (App. Div. 2019)). "In other words, courts [must] examine the 'relationship among the defendant, the forum, and the litigation.'" Ibid. (quoting Lebel, 115 N.J. at 323).

To assist a plaintiff, jurisdictional discovery may be permitted "[i]f a plaintiff presents factual allegations [suggesting] with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." Rippon, 449 N.J. Super. at 359 (alteration in original) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3rd Cir. 2003) (third alteration in original)). Once jurisdictional discovery is complete, "[i]f the pleadings and certifications submitted to the trial court do not permit resolution of the jurisdictional question, the trial court must conduct a 'preliminary evidential hearing after [having] afford[ed] the parties an appropriate opportunity for

discovery.'" Ibid. (quoting Citibank, N.A., v. Estate of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)).

In the present case, the second trial court recognized that defendants did not respond to plaintiff's demands for information identifying customer-dealers and the revenue generated from them, and this information had the potential of "establish[ing] sufficient contacts and purposeful availment via indirect sales to customer-dealers doing business in New Jersey," thereby establishing personal jurisdiction. Although the trial court noted that discovery had not ended, it failed to address why the motion to dismiss was not premature.[2] Instead, the court focused on the lack of information regarding customer-dealers but did not address whether the remaining discovery period would be fruitful and produce this important information.

Moreover, plaintiff argues the court's finding the record was deficient to determine the sufficiency of the Niece defendants' contacts is inconsistent with the court's decision to dismiss the complaint with prejudice. Because the trial court found that a jurisdictional determination hinged on this missing information, we are satisfied the court erred in dismissing the case with

---

[2] At oral argument, plaintiff's counsel acknowledged that jurisdictional discovery had not closed at the time the dismissal was granted.

prejudice at this juncture. As the first trial court astutely noted, "[d]efendants cannot simply object in the abstract or refuse to supply discovery." If defendants withhold information, then the court must "determine whether the information is discoverable."

We conclude that the record in this matter was incomplete; and therefore, the second trial court prematurely concluded that the Niece defendants were not subject to New Jersey's jurisdiction. Defendants point out that plaintiff had not moved to extend jurisdictional discovery when the court addressed the motion to dismiss. However, because the discovery end date was five months away, there was no need for plaintiff to move to extend jurisdictional discovery. Plaintiff was entitled to rely on the established discovery deadline and utilize the time afforded to him to conduct further discovery or seek to compel discovery. Cf. Rippon, 449 N.J. Super. at 362. Furthermore, the court did not address whether additional discovery would be futile. Although the remaining discovery period may not result in a determination of specific jurisdiction, the trial court erred by dismissing the complaint prior to discovery ending, particularly without explaining why ending discovery early was warranted. Therefore, we are constrained to reverse and remand for further proceedings consistent with this opinion.

A-2604-24

Because we are satisfied that the record is insufficient to address the jurisdictional determination, we need not address the parties' remaining contentions.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

14                                                      A-2604-24