**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5645-17T1

ROBERT A. D'ANGELO,

    Plaintiff-Appellant,

v.

OCWEN LOAN SERVICING,
LLC, A WHOLLY OWNED
SUBSIDIARY OF OCWEN
MORTGAGE SERVICING, LLC
and U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE
FOR THE CERTIFICATE
HOLDERS OF THE
MORTGAGE PASS-THROUGH
CERTIFICATES 1997-R2,

    Defendants-Respondents.

_____

Submitted December 2, 2019 – Decided May 8, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1934-14.

Robert A. D'Angelo, appellant pro se.

Houser LLP, attorneys for respondents (Kathleen M. Massimo, on the brief).

PER CURIAM

Plaintiff Robert A. D'Angelo appeals from an order granting summary judgment to defendants Ocwen Loan Servicing, LLC (Ocwen), a wholly owned subsidiary of Ocwen Mortgage Loan Servicing, LLC, and U.S. Bank National Association, as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates 1997-R2 (U.S. Bank); and dismissing plaintiff's claims under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -211, and for an accounting. Based on our review of the record, we affirm in part, vacate in part, and remand for further proceedings.

I.

On May 22, 2014, plaintiff filed an eleven-count complaint, which was later amended, asserting that over a twenty-two-year period, defendants engaged in a pattern of misconduct by refusing to accept his payments on a mortgage note on his residential property, claiming the mortgage was in default, and filing frivolous foreclosure actions against him. We summarized plaintiff's allegations in our opinion on his appeal from an order dismissing his causes of action for failure to state claims upon which relief can be granted, D'Angelo v. Ocwen Loan Servicing, LLC, No. A-4195-14 (App. Div. Feb. 23, 2017) (slip op. at 2-

8); and we affirmed dismissal of nine of the causes of action, reversed the dismissal of plaintiff's CFA and accounting claims, and remanded for further proceedings on those claims. D'Angelo, slip op. at 28. It is the Law Division's disposition of the two remanded claims that are at issue in this appeal.

After completion of discovery following the remand, defendants moved for summary judgment. The record supporting defendants' motion showed that in March 1985, plaintiff and his wife, Sharon M. D'Angelo (collectively "the D'Angelos"), executed a $225,000 mortgage note in favor of Citibank, N.A. (Citibank), and granted Citibank a mortgage on their Murray Hill property to secure payment of the note. Citibank transferred the note and assigned the mortgage to Ocwen Federal Bank, F.S.B. in 1996. In 1997, Ocwen Federal Bank, F.S.B. transferred the note and executed an assignment of the mortgage to LaSalle Bank, N.A., as Trustee for the Certificate Holders of the Mortgage Pass-Through Certificates, 1997-R2 (LaSalle Bank), but the assignment was not recorded with the Union County Clerk until July 1, 2011. U.S. Bank is the current holder of the note and assignee of the mortgage, and Ocwen has served as the loan servicer during times relevant to plaintiff's CFA and accounting claims.

U.S. Bank's predecessors-in-interest filed foreclosure actions against the D'Angelos in 1993, 1999, and 2002, each of which was dismissed or discontinued prior to 2005. The D'Angelos defaulted on the note and mortgage in 2005; plaintiff acknowledged during his deposition he last tendered a payment on the mortgage note in 2005.[1]

The 2008 Foreclosure Action

In 2008, Ocwen Federal Bank, F.S.B. filed a fourth foreclosure action against the D'Angelos. LaSalle Bank was substituted as the plaintiff in the foreclosure action, and later the note was transferred and the mortgage was assigned to U.S. Bank.

The D'Angelos filed an answer to the 2008 foreclosure complaint with affirmative defenses and counterclaims asserting Ocwen Federal Bank, F.S.B. refused to accept mortgage payments, caused the mortgage default, and refused to provide an accounting of the sums paid and due under the mortgage note. Plaintiff also alleged U.S. Bank's predecessors-in-interest filed frivolous

---

[1] In opposition to defendants' statement of material facts supporting their summary judgment motion, see R. 4:46-2, plaintiff asserted the mortgage default was "manufactured by [d]efendant," but the assertion is unsupported by citation to any competent evidence and otherwise ignores that the Chancery Division judge determined the D'Angelos were in default and entered a final judgment of foreclosure from which the D'Angelos did not appeal.

A-5645-17T1

foreclosure actions against the D'Angelos in 1993, 1999, and 2002, which were subsequently dismissed or discontinued.

LaSalle Bank moved for summary judgment, and, on October 19, 2010, the Chancery Division entered an order in the 2008 foreclosure action striking the D'Angelos' answer and affirmative defenses, and dismissing their counterclaims without prejudice "as being non-germane." The October 19, 2010 order permitted the refiling of the counterclaims in a separate proceeding in the Law Division, and deemed the foreclosure complaint "uncontested for entry of final judgment before the Foreclosure Unit."

The 2012 Foreclosure Action

In 2012, Ocwen filed an additional foreclosure action against the D'Angelos. The 2012 action sought to foreclose the same mortgage that was the subject of LaSalle Bank's 2008 foreclosure action. In his certification in opposition to defendants' summary judgment, plaintiff asserted the 2012 foreclosure action was filed while the 2008 foreclosure action was pending, and that the 2012 foreclosure action was subsequently "unilaterally dismissed" and the 2008 foreclosure action continued.[2]

---

[2] In opposition to defendants' summary judgment motion, plaintiff certified the 2008 foreclosure action was administratively dismissed and later reinstated, but

Plaintiff's 2014 Law Division Complaint

As permitted by the October 19, 2010 order in the 2008 foreclosure action, plaintiff filed a May 22, 2014 Law Division complaint, which was amended, asserting eleven causes of action against defendants. The Law Division judge subsequently entered an order granting defendants' motion to dismiss the complaint. As noted, in our February 23, 2017 decision on plaintiff's appeal from the Law Division's dismissal order, we reversed the dismissal of plaintiff's CFA and accounting claims, and remanded for further proceedings. D'Angelo, slip op. at 28.

The Disposition of the 2008 Foreclosure Action

Meanwhile, proceedings in the 2008 foreclosure case continued before Chancery Division Judge Joseph P. Perfilio. In 2017, the D'Angelos and U.S. Bank submitted proofs supporting their respective claims concerning the amount due under the note. U.S. Bank submitted a document entitled "Payment

---

the record does not reveal the dates of dismissal and reinstatement. Plaintiff further certified the 2012 foreclosure action was filed while the 2008 foreclosure action was pending and "[d]efendants had two separate pending foreclosure actions pending at the same time, both seeking the same relief." For purposes of our review of a summary judgment order, we accept those facts and all reasonable inferences therefrom in the light most favorable to plaintiff because he was the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

A-5645-17T1

Reconciliation Worksheet," which detailed what U.S. Bank claimed was the complete payment and expense activity associated with the note and mortgage, and which it contended constituted an accounting of the sums paid and due under the note.

After hearing argument and considering the parties' submissions, as well as "the history of the various foreclosures brought by" U.S. Bank and its predecessors-in-interest, Judge Perfilio granted U.S. Bank's motion for a final foreclosure judgment in the amount of $644,587.44, with interest and attorney's fees.[3] The court's October 12, 2017 "ORDER DENYING [THE D'ANGELOS'] OBJECTIONS TO FINAL JUDGMENT" included a breakdown of the separate amounts the judge determined were due to U.S. Bank for the principal balance due on the note ($142,228.32), interest ($47,634.07), real estate taxes and hazard insurance ($460,800.96), and foreclosure costs ($9,658.31); and awarded the D'Angelos an interest adjustment credit ($13,367.06) and a "suspense credit" ($2,366.76). The D'Angelos did not appeal from the court's order.

The Disposition of Plaintiff's Law Division Complaint

While the parties litigated the amount due in the 2008 foreclosure case, discovery continued in the Law Division matter. When discovery was

---

[3] The amount due was determined as of September 14, 2017.

completed, defendants moved for summary judgment on plaintiff's CFA and accounting claims. In support of their motion, defendants relied on plaintiff's deposition testimony he did not consider the Payment Reconciliation Worksheet an accounting, and he did not deem Judge Perfilio's analysis and findings of the amount due as an accounting.

Defendants also relied on plaintiff's testimony that: (1) he could not recall the last time he received a demand for monies from Ocwen; (2) he last made a mortgage payment in 2005; (3) Judge Perfilio deducted all requested late charges from the amount due from the D'Angelos; (4) the last time there was an alleged refusal to accept one of his mortgage payments was in 2005; and (5) he had no evidence showing defendant made improper charges for insurance payments. Plaintiff also testified his claim Ocwen improperly charged for real estate taxes was limited to tax payments made prior to 2005, and the damages he claimed in his CFA cause of action were limited to amounts, including attorney's fees, he argues Judge Perfilio incorrectly failed to award him in the foreclosure action.

After hearing argument, the Law Division judge issued a written decision finding plaintiff's cause of action for an accounting was barred under the doctrine of res judicata and because it was filed outside of the six-year statute

of limitations period.  See N.J.S.A. 2A:41-1.  The court granted defendants summary judgment on plaintiff's CFA claim, finding the cause of action was filed outside of the applicable six-year limitations period; it was barred under the litigation privilege; and plaintiff failed to present evidence he suffered an ascertainable loss.

The court entered an order granting defendants summary judgment and dismissing the complaint.  Plaintiff appealed and presents the following arguments for our consideration:

POINT ONE

DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT AS THERE ARE MATERIAL FACTS IN ISSUE.

POINT TWO

RES JUDICATA IS NOT AN APPLICABLE DEFENSE RELATING TO THE ACCOUNT FOR ACCOUNTING.

POINT THREE

THE STATUTE OF LIMITATIONS DOES NOT APPLY TO THE CLAIMS FOR ACCOUNTING OR CONSUMER FRAUD ACT.

<u>POINT FOUR</u>

DEFENDANT'S ARGUMENT CONCERNING LITIGATION PRIVILEGE IS NOT APPLICABLE TO THIS MATTER.

II.

We review a summary judgment order de novo, applying the same standard governing the motion judge's determination. <u>RSI Bank v. Providence Mut. Fire Ins. Co.</u>, 234 N.J. 459, 472 (2018). "By that standard, summary judgment should be granted 'when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."'" <u>Woytas v. Greenwood Tree Experts, Inc.</u>, 237 N.J. 501, 511 (2019) (quoting <u>Brill</u>, 142 N.J. at 528-29); <u>see also</u> <u>R.</u> 4:46-2(c). Issues of law are subject to the de novo standard of review, and the trial court's determination of such issues is accorded no deference. <u>Kaye v. Rosefielde</u>, 223 N.J. 218, 229 (2015).

A.

Plaintiff argues the court erred by granting summary judgment dismissing the cause of action for an accounting. In our prior decision, we explained "[c]ount seven alleges plaintiff made mortgage payments and paid insurance

10

premiums over a lengthy period of time without receiving proper credit, defendants failed to pay real estate taxes funded by plaintiff's mortgage payments, and defendants charged plaintiff for insurance premiums that were improper and never credited." D'Angelo, slip op. at 24.

Plaintiff argues the doctrine of res judicata does not bar his accounting claim because the motion court and this court previously determined the doctrine was inapplicable here. Plaintiff relies on the motion court's April 7, 2015 written decision and order granting defendants' initial motion to dismiss, where it found a September 15, 2010 order entered by the Chancery Division in the 2008 foreclosure action did not bar plaintiff's claims for an accounting based on res judicata. In that instance, however, the motion court determined only that the September 15, 2010 Chancery Division order did not bar plaintiff from a future accounting claim.

Here, the motion court found that a wholly different order—Judge Perfilio's October 12, 2017 "ORDER DENYING [THE D'ANGELOS'] OBJECTIONS TO FINAL JUDGMENT"—barred relitigation of plaintiff's claim for an accounting. Judge Perfilio's order was entered more than two years after the order granting defendants' motion to dismiss, and, thus, the 2015 order

11

dismissing the complaint could not have, and did not, address the effect of the October 12, 2017 Chancery Division order.

Similarly, our prior opinion did not address the merits of defendants' res judicata defense, nor could we have determined whether the October 12, 2017 Chancery Division order barred plaintiff's accounting claim because our decision was issued eight months before entry of that order. Most simply stated, our prior decision did not include any finding defendants could not rely on res judicata as a defense to plaintiff's accounting claim.

Plaintiff offers no substantive arguments challenging the court's determination his claim for an accounting is barred under the doctrine of res judicata, and we otherwise determine the record supports the court's conclusion. Whether an action is barred by the doctrine of res judicata "is a question of law 'to be determined by a judge in the second proceeding after weighing the appropriate factors bearing upon the issue.'" Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000) (quoting Colucci v. Thomas Nicol Asphalt Co., 194 N.J. Super. 510, 518 (App. Div. 1984)). We owe no deference to the trial court's determination and decide the issue of law de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The doctrine of res judicata bars "relitigation of claims or issues that have already been adjudicated" and provides that "a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." Velasquez v. Franz, 123 N.J. 498, 505 (1991). The doctrine fosters "the important policy goals of 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness,'" First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007) (quoting City of Hackensack v. Winner, 82 N.J. 1, 32-33 (1980)), and "maintain[s] judicial integrity by minimizing the possibility of inconsistent decisions regarding the same matter," Velasquez, 123 N.J. at 505.

For the doctrine of res judicata to bar an action:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.
>
> [Rippon v. Smigel, 449 N.J. Super. 344, 367 (App. Div. 2017).]

See also Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460 (1989) (finding the doctrine of res judicata bars a claim where there are "substantially similar or identical causes of action and issues, parties, and relief sought" between the two actions, and a final judgment has been entered in the earlier action by a court of competent jurisdiction). The doctrine applies "not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991).

Measured against these standards, the doctrine of res judicata bars plaintiff's claim for an accounting. Judge Perfilio's October 12, 2017 order was a final judgment on the merits of the precise issues for which plaintiff sought the final accounting: credits for mortgage payments made; and the calculation of the amount due to U.S. Bank for the principal sum due under the note, interest, and reimbursement for taxes and insurance paid on the D'Angelos' behalf. Indeed, Judge Perfilio permitted the parties to conduct discovery on those issues and present their proofs prior to issuing a final judgment on the merits, from which plaintiff opted not to appeal.

Moreover, the parties in the foreclosure action were in privity with the parties in the Law Division proceeding because the plaintiff in the foreclosure,

LaSalle Bank, assigned the mortgage to U.S. Bank, and Ocwen served as the mortgagee's loan servicer. See, e.g., Puche v. Wells Fargo, NA, 256 F. Supp. 3d 540, 548-49 (D.N.J. 2017) (explaining that a claim against a mortgage loan servicer, who is not a party to the underlying foreclosure action, is barred under the entire controversy doctrine where the claim could have been litigated in the foreclosure action against the mortgagee); Delacruz v. Alfieri, 447 N.J. Super. 1, 12 (Law Div. 2015) (finding the entire controversy doctrine barred claims against a mortgage loan servicer following entry of a final judgment in the foreclosure action on the mortgage).

It is also undisputed plaintiff's accounting claim in the Law Division case arose out of the identical transaction and occurrence as those presented to Judge Perfilio. The motion court therefore correctly determined plaintiff's claim for an accounting in count seven of the complaint is barred under the doctrine of res judicata by the Chancery Division's October 12, 2017 final order in the 2008 foreclosure action.[4]

---

[4] Because we are convinced the court correctly granted summary judgment dismissing count seven on res judicata grounds, it is unnecessary to consider or decide whether the court also correctly determined count seven was time-barred under N.J.S.A. 2A:14-1. We review a court's order and not its reasoning, Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001), and we express no opinion on the court's determination the accounting claim was filed outside of

A-5645-17T1

B.

Plaintiff also challenges the court's order granting defendants summary judgment on the CFA claim in count nine of the complaint. As we previously described, count nine "alleges defendants engaged in a course of deceitful and unconscionable conduct in their efforts to enforce and collect the sums due under plaintiff's loan." D'Angelo, slip op. at 26. The court granted summary judgment on the CFA claim for three reasons: (1) the CFA claim was barred under the ligation privilege, see generally Loigman v. Twp. Comm. of Middletown, 185 N.J. 566, 585-87 (2006) (explaining the elements and application of the litigation privilege); (2) the CFA claim was time-barred under the six-year statute of limitations, see N.J.S.A. 2A:14-1; and (3) plaintiff failed to present evidence he suffered the ascertainable loss essential to a CFA claim, see Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011) (explaining the elements of a CFA claim).

In his complaint, plaintiff asserted defendants violated the CFA by filing the prior foreclosure actions and by failing to participate in good faith in the

---

the six-year limitations period in the statute. We reject, however, plaintiff's argument that in our prior decision on his appeal from the court's dismissal order we held his surviving CFA and accounting claims were not barred by the applicable statute of limitations. We made no such holding and did not address the merits of the statute of limitations defense in that opinion.

court-ordered mediation proceedings during the foreclosure actions. Plaintiff also alleged defendants violated the CFA by failing to accept his mortgage payments and credit his account for payments made, and by improperly charging him for payments for real estate taxes and insurance.

The record supports the conclusion that portions of plaintiff's CFA claim are time-barred by the applicable six-year statute of limitations. See D'Angelo v. Miller Yacht Sales, 261 N.J. Super. 683, 688 (App. Div. 1993) (noting CFA claims must be brought within six years of accrual); see also N.J.S.A. 2A:14-1. The 1993, 1999, and 2002 foreclosure actions were terminated prior to 2005, more than six years prior to the filing of plaintiff's 2014 complaint.

Similarly, plaintiff admitted he last made a mortgage payment in 2005, and any purported failure to credit his account for mortgage payments last accrued at that time. Plaintiff further acknowledged during his deposition that his CFA claim concerning defendants' payment of taxes pertains only to pre-2005 real estate taxes on the property.

Plaintiff offers no competent evidence or argument challenging the court's determination his CFA claims—based on the 1993, 1999, and 2002 foreclosure actions; defendants' purported failures to accept mortgage payments; and errors in the calculation of tax payments—were not timely filed. We therefore affirm

A-5645-17T1

the court's order dismissing those claims; they are time-barred under N.J.S.A. 2A:14-1.[5]

We also consider plaintiff's claim that defendants violated the CFA in by filing and prosecuting the 2008 and 2012 foreclosure complaints. Plaintiff testified his CFA claim is based on "the manner in which [d]efendants conducted the prior foreclosure litigation"; asserted in opposition that defendants prosecuted two foreclosure actions against him at the same time; and alleged in the complaint that, during the foreclosure proceedings, defendants "failed and refused to abide by Court Rules and processes, failed to participate in good faith in the court foreclosure mediation process, and brought . . . litigations [they] did not complete because of [their] . . . failure [to provide] information required."

The court erred by finding plaintiff's CFA claim based on the 2008 and 2012 foreclosure proceedings was untimely.[6] LaSalle Bank's foreclosure action

---

[5] We also affirm the summary judgment award on plaintiff's claim defendants violated the CFA by improperly charging him for their payment for insurance on the property. As the motion court noted, plaintiff testified he had no evidence of improper insurance charges by defendants.

[6] The motion court's analysis of the timelines of the CFA claim did not include an assessment of the separate factual bases relevant to the various foreclosure actions. Thus, the court did not make any express findings concerning the timeliness, for statute of limitations purposes, of plaintiff's CFA claim based on the five separate foreclosure actions that were prosecuted against him and his

began in 2008, continued until entry of the October 12, 2017 final judgment, and was ongoing when plaintiff filed his 2014 Law Division complaint. The complaint was also filed within two years of the commencement of the 2012 foreclosure action. Thus, the CFA claim based on the proceedings in the 2008 and 2012 foreclosure actions was timely filed within the six-year limitations period in N.J.S.A. 2A:14-1.

To establish a cause of action under the CFA, a plaintiff must prove: "1) unlawful conduct by defendant; 2) an ascertainable loss; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). An unlawful practice is defined as the

> use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

---

wife. The court only generally determined the CFA claim was time-barred under N.J.S.A. 2A:14-1.

[N.J.S.A. 56:8-2.]

The CFA is to "be construed liberally in favor of consumers," Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994), and "broadly in determining the range of endeavors that fall under its protective umbrella . . . [g]iven that '[t]he fertility of [human] invention in devising new schemes of fraud is so great,'" Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 534 (App. Div. 2008) (quoting Lemelledo v. Beneficial Mgmt., 150 N.J. 255, 265 (1997)). "The standard of conduct that the term 'unconscionable' implies [in N.J.S.A. 56:8-2] is lack of 'good faith, honesty in fact and observance of fair dealing.'" Cox, 138 N.J. at 18. In Gonzalez, the Court determined that unconscionable practices "in fashioning and collecting on" a loan constitute commercial practices "in connection with . . . the subsequent performance" of a loan that violates the CFA. 207 N.J. at 587; see also Jefferson Loan Co., 397 N.J. Super. at 538 (finding the CFA applies to unconscionable loan collection activities on a retail installment contract).

Defendants were entitled to summary judgment on the CFA claim based on the 2008 foreclosure action because the filing and prosecution of the action did not constitute an unconscionable business practice under the CFA. Plaintiff was in default under the mortgage and note when the 2008 foreclosure action

was filed—he last made a mortgage payment in 2005—and the action was litigated to conclusion in LaSalle Bank's favor with entry of the 2017 final judgment of foreclosure, which the D'Angelos never challenged on appeal. The 2008 foreclosure action constituted LaSalle Bank's use of the courts to enforce its legal rights under the mortgage and note against the D'Angelos, and, therefore, plaintiff did not establish an essential element of his CFA claim—that LaSalle Bank's prosecution of the 2008 foreclosure action constituted an unlawful practice within the meaning of N.J.S.A. 56:8-2.[7] See Gonzalez, 207 N.J. at 576 (noting in pertinent part that a consumer must prove an unlawful practice under N.J.S.A. 56:8-2 to establish a CFA claim). Thus, defendants are entitled to summary judgment on plaintiff's claim defendants violated the CFA by filing and prosecuting the 2008 foreclosure action.[8]

---

[7] The 2008 foreclosure action was filed and prosecuted to conclusion by LaSalle Bank. Plaintiff CFA claim is based in part on the filing and prosecution of the 2008 foreclosure action, but he failed to name LaSalle Bank as a defendant. Ocwen and U.S. Bank do not argue they are entitled to summary judgment because they were not parties to the 2008 foreclosure action.

[8] Our determination defendants are entitled to summary judgment on the CFA claim because the filing and prosecution of the 2008 foreclosure action did not constitute an unlawful practice under N.J.S.A. 56:8-2 renders it unnecessary to decide whether the court correctly dismissed the claim based on the litigation privilege.

Plaintiff's remaining claim under the CFA is that Ocwen's filing and prosecution of the 2012 foreclosure action constituted an unconscionable commercial practice. Plaintiff claims the 2012 foreclosure action was frivolous because the identical foreclosure relief was sought in the then-pending 2008 foreclosure action. Plaintiff further alleges that the 2012 foreclosure action was brought for the purpose of causing him to expend his limited financial assets on attorney's fees and litigation costs, and that the litigation was resolved in his favor with Ocwen's unilateral dismissal of the action.

The motion court did not separately analyze this claim, but instead granted summary judgment based on its general conclusions plaintiff's CFA claim was time-barred; barred by the litigation privilege; and because plaintiff did not present evidence he suffered an ascertainable injury.

As noted, we reject the court's determination the CFA claim based on the 2012 foreclosure proceedings is time-barred. We also reject the court's determination that, as a matter of law, the CFA claim based on the 2012 foreclosure action is barred by the litigation privilege.

The litigation privilege "exists in respect of statements . . . made in the course of [court] proceedings . . . , and having some relation thereto, . . . and is responsive to the supervening public policy that persons in such circumstances

be permitted to speak and write freely without the restraint of fear of an ensuing defamation action." Hawkins v. Harris, 141 N.J. 207, 214 (1995) (quoting Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957)). The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Id. at 216 (internal citation omitted).

Application of the litigation privilege is not limited to the defense of defamation claims. Loigman, 185 N.J. at 583. It has been "extended . . . to cover unconventional and sometimes novel causes of action against attorneys [and parties] acting within the judicial process," including "a host of . . . tort-related claims." Ibid. For example, In Loigman, the Court found the ligation privilege barred a 42 U.S.C. § 1983 claim that the filing of a sequestration motion for the purpose of precluding the plaintiff's attendance at hearings before an Administrative Law Judge violated the plaintiff's civil rights. Id. at 583-85; see also Giles v. Phelan, Hallinan & Schmieg, LLP, 901 F. Supp. 2d 509, 526-27 (D.N.J. 2012) (holding the litigation privilege barred a CFA claim alleging the defendants filed foreclosure lawsuits based on false statements of fact and without legal standing).

A-5645-17T1

However, "[t]he one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process." Baglini v. Lauletta, 338 N.J. Super. 282, 297 (App. Div. 2001) (citing Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 564-65 (1995)); see also Loigman, 185 N.J. at 584 n.4 (explaining "the litigation privilege is not available in a malicious prosecution action"). 185 N.J. at 584 n.4. "Malicious prosecution provides a remedy for harm caused by the institution or continuation of a criminal action that is baseless. Malicious use of process . . . is essentially the analog used when the offending action in question is civil rather than criminal." LoBiondo v. Schwartz, 199 N.J. 62, 89-90 (2009) (citations omitted).

We recognize plaintiff has not directly filed a malicious use of process claim against defendants. See Baglini, 338 N.J. Super. at 293-94 (explaining elements of causes of action for malicious use and abuse of process); see also Tedards v. Auty, 232 N.J. Super. 541, 548-51 (App. Div. 1989) (finding the filing of a baseless writ used to attempt to coerce a party into paying the opposing party's legal fees constituted malicious use of process). Plaintiff's CFA cause of action is founded on his claim, and supporting certifications alleging, defendants engaged in such tortious conduct in the filing and prosecution of the 2012 foreclosure action, and their conduct constituted an

24

unconscionable commercial practice violative of the CFA. If proven at trial, defendants' commission of alleged tortious conduct in the filing and prosecution of the 2012 foreclosure action falls within the broad "range of endeavors" lacking good faith, honesty in fact and observance of fair dealing that constitute unconscionable commercial practices—including loan collection practices— under the CFA. See Cox, 138 N.J. at 18; see also Jefferson Loan Co., 397 N.J. Super. at 538.

Where a CFA claim is founded on unconscionable commercial practices that also constitute malicious use of process, the litigation privilege cannot properly bar the claim. Thus, the motion court erred by making the general determination, without any analysis of plaintiff's specific allegations and evidence, the CFA claim based on the filing and prosecution of the 2012 foreclosure is barred by the litigation privilege.

Although we review the court's summary judgment order de novo, the motion court should consider the parties' submissions and decide in the first instance whether the litigation privilege bars plaintiff's CFA claim founded on the 2012 foreclosure action. See Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018) (finding that "our function as an appellate court is to review the decision of the trial court [granting summary judgment],

25

not to decide the motion tabula rasa"). We therefore vacate that portion of the court's order finding plaintiff's CFA claim related to the filing and prosecution of the 2012 foreclosure proceedings is barred by the litigation privilege. We do so because the motion court did not expressly consider the evidence presented and the parties' arguments and address application of the litigation privilege to that claim prior to entry of the summary judgment order. We remand for the court to consider and decide whether defendants are entitled to summary judgment on that claim based on the litigation privilege. On remand, the parties may further litigate the issue of whether defendants are entitled to application of the litigation privilege as a matter of law based on the record presented at that time.

The court also granted defendants summary judgment on plaintiff's CFA claim related to the 2012 foreclosure action based on its finding plaintiff failed to sustain his burden of establishing an ascertainable loss because he claimed damages only for the attorney's fees he incurred in response to the action.[9] An ascertainable loss must be "quantifiable or measurable," not "hypothetical or

---

[9] The court did not make specific findings concerning plaintiff's ascertainable loss claim related to the 2012 foreclosure action, but the court's general determination plaintiff did not suffer an ascertainable loss applies to his 2008 foreclosure-related claim.

illusory," and includes "out-of-pocket loss[es]." <u>Thiedemann v. Mercedes-Benz USA, LLC</u>, 183 N.J. 234, 248 (2005). "When an unconscionable commercial practice has caused the plaintiff to lose money . . . , that loss [satisfies] the 'ascertainable loss' element of [a] CFA claim." <u>D'Agostino</u>, 216 N.J. at 192.

Here, plaintiff presented evidence, in the form of his certifications, asserting defendants' alleged filing and prosecution of the 2012 foreclosure action, which he asserts violated the CFA, caused him to lose money—the attorney's fees he was forced to incur as a result of the action. Indeed, plaintiff asserts the filing and prosecution of the 2012 foreclosure action in violation of the CFA was, at least in part, intended to cause him to expend moneys on attorney's fees. Under those circumstances, we reject the court's findings plaintiff did not present sufficient evidence raising an issue of fact as to whether he sustained an ascertainable loss sufficient to support his CFA claim related to the 2012 foreclosure action.[10]

---

[10] The record on appeal includes the September 1, 2015 and December 22, 2015 orders entered in the 2008 foreclosure action. The orders appear to address issues related to plaintiff's claims for attorney's fees in the 1993, 1999, 2002, and 2012 foreclosure actions. The record is insufficient to permit any discussion or findings about the claims and issues presented to, and decided by, the Chancery Division in entering those orders, and we express no opinion as to the relevance or import of the orders to plaintiff's CFA claim related to the 2012 foreclosure action, including his assertion he suffered an ascertainable loss.

Any of plaintiff's remaining arguments we have not directly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In sum, we affirm the court's order granting summary judgment to defendants on plaintiff's claim for an accounting and his CFA claim based on the 1993, 1999, 2002, and 2008 foreclosure proceedings. We reverse the court's order granting summary judgment on plaintiff's CFA claim related to the 2012 foreclosure proceedings based on statute of limitations grounds and the court's determination plaintiff failed to present sufficient evidence of an ascertainable loss. We vacate the court's determination the CFA claim related to the 2012 foreclosure proceeding is barred by the litigation privilege, and remand for the court to consider and decide that issue based on the summary judgment record presented at that time.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5645-17T1