**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1893-19

PJSC ARMADA and
ARSENAL ADVISOR,
LTD.,

      Plaintiffs-Appellants,

v.

ALEXY KUZOVKIN, ALLA
ROITMAN, and YEFIM
ROITMAN,

      Defendants-Respondents.

_____

Argued May 20, 2021 – Decided September 3, 2021

Before Judges Hoffman, Suter, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0197-19.

Corinne McCann Trainor argued the cause for appellants (Fox Rothschild, LLP, attorneys; Ely Goldin and Corinne McCann Trainor, of counsel and on the briefs; Allison L. Hollows, on the briefs).

Jeffrey Fleischmann argued the cause for respondent Alexy Kuzovkin.

Peter Slocum argued the cause for respondents Alla Roitman and Yefim Roitman (Lowenstein Sandler, LLP, attorneys; Christopher S. Porrino and Peter Slocum, on the brief).

PER CURIAM

Plaintiffs PJSC Armada (Armada) and Arsenal Advisor Ltd. (Arsenal) appeal from two Law Division orders, dated June 28, and December 2, 2019, that dismissed their complaint with prejudice against defendants, Alla Roitman, Yefim Roitman, and Alexy Kuzovkin. In the June 28, 2019 order, the motion court dismissed plaintiffs' claims against the Roitmans for failure to state a claim upon which relief can be granted under Rule 4:6-2(e) and on forum non conveniens grounds; additionally, it dismissed Arsenal's claims for lack of standing. In the December 2, 2019 order, the court dismissed plaintiffs' claims against Kuzovkin for lack of personal jurisdiction.

We conclude the motion court erred in dismissing plaintiffs' complaint with prejudice, as its dismissal at this stage did not represent an adjudication on the merits. Thus, any dismissal of plaintiffs' claims should have been without prejudice to afford plaintiffs the opportunity to amend their complaint. We further conclude the motion court's dismissals on jurisdictional grounds were premature; instead, the court should have permitted discovery on the questions

of personal jurisdiction and forum non conveniens. Finally, we conclude the motion court erred in dismissing plaintiffs' claims pursuant to Rule 4:6-2(e). Accordingly, we reverse and remand for discovery and to allow plaintiffs to amend their complaint.

I.

A.

Because this appeal comes to us on a Rule 4:6-2 motion to dismiss, we accept the facts alleged in the complaint as true, granting plaintiff "every reasonable inference of fact." Green v. Morgan Props., 215 N.J. 431, 452 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). Thus, we begin with a summary of the facts pled by plaintiffs.

Plaintiff Armada is a public joint-stock company formed and registered in the Russian Federation, with its principal place of business in Moscow. Armada's stock trades on the Moscow Interbank Currency Exchange. At all relevant times, Armada served as the parent company of a consortium of companies which, at its peak in 2012, ranked as one of the top five software developers in Russia, with combined annual sales of approximately RUB 5.579 million (or $184 million under the 2012 prevailing exchange rate).

A-1893-19

Plaintiff Arsenal, a corporation formed under the laws of the British Virgin Islands, was the principal shareholder of Armada. Armada's other shareholders included major American, European, and Russian financial institutions.

Defendant Kuzovkin led Armada's management team and, from 2012 to 2014, engaged in a fraudulent scheme to siphon money and technology from Armada for his personal benefit. Kuzovkin's illegal scheme involved: 1) the transfer of Armada funds to shell companies under the guise of software development contracts; 2) the formation of a competitor company, Programmy Produkt LLC, which poached business and employees from Armada; and 3) usurious lending between Armada and three of its wholly owned subsidiaries. Russian banks facilitated Kuzovkin's scheme by allowing him to transfer the profits of his schemes into shell companies and offshore accounts.

In late 2013, Armada's shareholders commenced corporate and legal proceedings in Russia to oust Kuzovkin and the other Armada managers from their posts, eventually succeeding in 2014; however, Kuzovkin fled to Austria, leaving Armada's offices completely empty. Before fleeing to Austria, in the fall of 2013, Kuzovkin purchased $8,500,000 worth of real estate in Austria and Russia using the embezzled funds. This included an October 18, 2013 purchase

4

of a luxury Moscow apartment owned by defendant Alla Roitman, a New Jersey citizen living in Mahwah. On that same day, Kuzozkin also used embezzled funds to purchase an automobile parking spot associated with the apartment from Alla Roitman's father, Yefim Roitman, also a New Jersey citizen.

In August 2017, plaintiffs obtained permission from the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1782, to subpoena Alla Roitman for information related to her sale of the Moscow property to Kuzovkin. In response to the subpoena, Alla Roitman produced one document, an agreement of sale dated October 18, 2013. Her counsel explained a cash transaction facilitated the sale, with Kuzovkin dropping off cash in a Moscow safe deposit box and Alla Roitman retrieving it after the agreement of sale was signed.

The agreement of sale, written in Russian, lists the sale price as ₽27,560,978 rubles, which equaled approximately $1,000,000 in United States dollars (USD). The fair market value of the apartment, however, was approximately $3,500,000 USD, and plaintiffs allege Kuzovkin actually paid the equivalent of $3,700,000 USD for the apartment and parking spot via the safety deposit box, with the sales agreement misrepresenting the sale price to conceal the embezzled funds Kuzozkin used to pay.

A-1893-19

Plaintiffs allege Alla and Yefim Roitman intentionally concealed the true sale price with Kuzovkin "to assist Kuzovkin in his embezzlement and siphoning of assets away from Armada and its shareholders."  The Roitmans were aware of Kuzovkin's embezzlement and misconduct, and by assisting him with this fraudulent transfer, they became active participants in Kuzovkin's illegal scheme.

## B.

On January 9, 2019, plaintiffs filed their Law Division complaint, asserting six causes of action: (1) breach of fiduciary duty against Kuzovkin only; (2) aiding and abetting breach of fiduciary duty against the Roitmans only; (3) common law fraud against all defendants; (4) fraudulent transfer against all defendants;[1] (5) civil conspiracy against all defendants; and (6) racketeering, in violation of the New Jersey Racketeer Influenced and Corrupt Organizations Act[2] (NJRICO).  For relief, plaintiffs "demand[ed] judgment in their favor in an amount in excess of $3,700,000, along with an award of costs and any other relief that this Court deems necessary, just and appropriate."

---

[1]  After receiving the Roitman's motion to dismiss, plaintiffs voluntarily withdrew the count for fraudulent transfer.

[2]  N.J.S.A. 2C:41-1 to -6.2.

In May 2019, the Roitmans filed a motion to dismiss, which the motion court granted on June 28, 2019. In a written opinion, the court stated that, per Rule 4:6-2(e), the complaint failed to state a claim upon which relief could be granted because the factual allegations were insufficient to establish plaintiffs' causes of action against the Roitmans. The court further found Arsenal lacked standing to assert its claims against the Roitmans because Arsenal's claimed injury arose solely from its status as shareholder of Armada. Additionally, the court determined the claims against the Roitmans should be dismissed on forum non conveniens grounds. The court found that New Jersey was a "demonstrably inappropriate" forum, that Russia would provide an adequate alternative, and that the relevant public and private interest factors favored dismissal. Though the court's opinion stated each individual claim against the Roitmans was dismissed without prejudice, the order granting the Roitmans' motion to dismiss stated the complaint was dismissed with prejudice.

On September 23, 2019, Kuzovkin filed a separate motion to dismiss, asserting plaintiffs' complaint failed to state a claim upon which relief could be granted per Rule 4:6-2(e), and the court lacked personal or subject matter jurisdiction over him per Rule 4:6-2-(b). Plaintiffs opposed the motion and also submitted a proposed amended complaint, requesting the opportunity to file the

A-1893-19

amendment. The court granted Kuzovkin's motion, dismissing plaintiffs' complaint with prejudice, concluding that Kuzovkin was not subject to personal jurisdiction in New Jersey.

Plaintiffs now appeal the orders that dismissed their complaint against all three defendants. Plaintiffs argue the motion court's with-prejudice dismissal of their complaint was in error, as the court prematurely ruled on dispositive issues without permitting plaintiffs to engage in jurisdictional discovery, establish an evidentiary record relative to Kuzovkin's contacts with New Jersey, or amend their complaint to provide supplemental facts. We agree.

II.

A.

At the outset, we find the motion court erred in dismissing plaintiffs' complaint with prejudice. We assume the court's basis for dismissing plaintiffs' claims against the Roitmans with prejudice was its application of forum non conveniens because the court stated in its written opinion that its dismissal of those claims for failure to state a claim was without prejudice. Similarly, in its subsequent order, the court dismissed the claims against Kuzovkin with prejudice after concluding it lacked personal jurisdiction over Kuzovkin.

8

"Generally, a dismissal that is 'on the merits' of a claim is with prejudice, but a dismissal that is 'based on a court's procedural inability to consider a case' is without prejudice." Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 243 (1998) (quoting Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 415-16 (1991)). A dismissal based upon lack of jurisdiction is not an adjudication on the merits. Exxon Rsch. & Eng'g. Co. v. Indus. Risk Insurers, 341 N.J. Super. 489, 519 (App. Div. 2001); Egg Harbor Care Ctr. v. Scheraldi, 455 N.J. Super. 343, 355-56 (App. Div. 2018); see also R. 4:37-2(d) (excepting dismissal for lack of jurisdiction from other types of dismissals that act as an adjudication on the merits).

Dismissals based on a lack of personal jurisdiction or on forum non conveniens grounds, which too concerns jurisdiction, therefore should be without prejudice, affording litigants the ability to amend their pleadings to cure jurisdictional defects. Plaintiffs here should have been allowed such an opportunity.

Notwithstanding this error, we further conclude the motion court prematurely decided these jurisdictional questions and instead should have permitted discovery on these issues.

9

B.

Forum non conveniens is an equitable doctrine allowing a court to decline jurisdiction "whenever the ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate." Aguerre v. Schering-Plough Corp., 393 N.J. Super. 459, 474 (App. Div. 2007) (quoting D'Agostino v. Johnson & Johnson, Inc., 225 N.J. Super. 250, 259 (App. Div. 1988), rev'd on other grounds, 133 N.J. 516 (1993)). Dismissal of an action based on the doctrine of forum non conveniens falls within the discretion of the trial court, and that decision will not be overturned unless we find an abuse of discretion. In re Vioxx Litig., 395 N.J. Super. 358, 364 (App. Div. 2007) (citing Kurzke v. Nissan Motor Corp., 164 N.J. 159, 165 (2000)).

The first inquiry by the court on a dismissal application based on forum non conveniens is whether there is an adequate alternative forum for the case where the defendant is amenable to service of process and the subject matter of the dispute may be litigated. Varo v. Owens-Illinois, Inc., 400 N.J. Super. 508, 519-20 (App. Div. 2008). "An alternative forum will be deemed inadequate if 'the remedy offered by the other forum is clearly unsatisfactory.'" Yousef v. Gen. Dynamics Corp., 205 N.J. 543, 557 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981)).

A-1893-19

If an adequate alternative forum exists, the court must consider and weigh both public and private interest factors set forth in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508-09 (1947), to determine whether the plaintiff's choice of forum is appropriate for the matters at issue. <u>Kurzke</u>, 164 N.J. at 165-66. The public interest factors are as follows:

> (1) the administrative difficulties which follow from having litigation "pile up in congested centers" rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial[,] and (4) the local interest "in having localized controversies decided at home."
>
> [<u>Aguerre v. Schering-Plough Corp.</u>, 393 N.J. Super. 459, 474 (App. Div. 2007) (quoting <u>D'Agostino</u>, 225 N.J. Super. at 263).]

The private interest factors are:

> (1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) whether a view of the premises is appropriate to the action[,] and (4) all other practical problems that make trial of the case "easy, expeditious and inexpensive," including the enforceability of the ultimate judgment.
>
> [<u>Ibid.</u> (quoting <u>D'Agostino</u>, 225 N.J. Super. at 263).]

11

"Ordinarily, a plaintiff's choice of forum will be honored by a court that has jurisdiction over a case[,]" Yousef, 205 N.J. at 557, albeit "a foreign plaintiff's choice deserves less deference[,]" Vioxx Litig., 395 N.J. Super. at 365 (quoting Piper Aircraft, 454 U.S. at 256).  Therefore, "[a] plaintiff's choice of forum may not be defeated upon a mere balance of conveniences.  [U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  Yousef, 205 N.J. at 558 (citations and internal quotation marks omitted) (second alteration in original).  Ultimately, a court should not dismiss based on forum non conveniens unless its assessment of the Gulf Oil factors shows the plaintiff's choice of forum is "'demonstrably inappropriate.'"  Id. at 557 (citing Kurzke, 164 N.J. at 171-72).

Our Supreme Court has long recognized that the decision on forum non conveniens is better made when it is "reserved until discovery has proceeded sufficiently to enable the court to make a better-informed assessment of the private-and public-interest factors."  D'Agostino v. Johnson & Johnson, Inc., 115 N.J. 491, 494 n.1 (1989).  "Although the factors set forth in Gulf Oil are of central importance, pre-discovery is ordinarily an inappropriate point in the litigation at which to consider them."  Kurzke, 164 N.J. at 172.

Thus the Court has said:

> As a general rule, a motion for dismissal due to forum non conveniens should not be heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by the plaintiff. Mere speculation about potential inadequacies ordinarily is not a sufficient basis to deny the plaintiff the choice of forum.
>
> [Id. at 168.]

Only in a limited number of cases, in which "the burden to a defendant will be so grossly unfair and obvious on the face of the pleadings," can a defendant move pre-discovery on these grounds. Ibid.

The motion court determined this was such a case where "there is no need to conduct discovery regarding the appropriateness of [p]laintiffs' choice of forum, as the [c]omplaint sets forth all sufficient facts to determine that New Jersey is 'demonstrably inappropriate.'" We disagree.

A grossly unfair burden to the Roitmans is not obvious from the face of plaintiffs' complaint. Alla and Yefim Roitman are New Jersey citizens residing in Bergen County. Without discovery revealing contrary information, it is unclear how it would be demonstrably inappropriate or unduly burdensome for the Roitmans to litigate this matter in their home forum.

Moreover, the pleadings do not sufficiently establish that Russia will offer an adequate alternative forum. The record is devoid of evidence showing the Roitmans are amenable to service in Russia or that Russian law offers a satisfactory remedy to resolve plaintiffs' claims against the Roitmans. That plaintiffs had already commenced proceedings against Kuzovkin in Russia does not guarantee they could do so against the Roitmans, New Jersey residents who, unlike Kuzovkin, had no direct connection to Armada.

We therefore conclude the motion court mistakenly exercised its discretion by prematurely considering the public and private interest factors, rather than permitting discovery. Indeed, proper evaluation of those factors required discovery as well. Without the benefit of discovery, the motion court's conclusions about lack of access to the sources of proof and the suit's unrelatedness to New Jersey were purely speculative.

## C.

We likewise find the motion court erred by finding it lacked personal jurisdiction over Kuzovkin without first permitting discovery on the issue.

The question of personal jurisdiction involves a mixed question of law and fact. Zahl v. Eastland, 465 N.J. Super. 79, 92 (App. Div. 2020). We will not disturb a trial court's factual findings concerning jurisdiction if they are

14

supported by substantial credible evidence. Rippon v. Smigel, 449 N.J. Super. 344, 358 (App. Div. 2017). We review de novo the legal aspects of personal jurisdiction. Ibid. (citing Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007)). Moreover, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference [on appeal]." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

New Jersey courts "may exercise in personam jurisdiction over a non-resident defendant 'consistent with due process of law.'" Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. 420, 428 (App. Div. 2000) (alterations omitted) (quoting R. 4:4-4(b)(1)). Our courts exercise jurisdiction over nonresident defendants "to the uttermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971); Jardim v. Overley, 461 N.J. Super. 367, 377 (App. Div. 2019).

A two-part test governs the analysis of personal jurisdiction: (1) defendant must have "certain minimum contacts" with the forum state, and (2) maintaining the suit in that state cannot offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "[T]he requisite quality

15

and quantum of contacts is dependent on whether general or specific jurisdiction is asserted . . . ." Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 526 (App. Div. 1996).

General jurisdiction exists when the plaintiff's claims arise out of the defendant's "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Baanyan Software Servs., Inc. v. Kuncha, 433 N.J. Super. 466, 474 (App. Div. 2013). For general jurisdiction to attach, a defendant's activities must be "so continuous and systematic as to render [it] essentially at home in the forum State." FDASmart, Inc. v. Dishman Pharm. & Chems., Ltd., 448 N.J. Super. 195, 202 (App. Div. 2016) (alteration in original) (citation omitted) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)).

Specific jurisdiction is available when the "cause of action arises directly out of a defendant's contacts with the forum state . . . ." Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994). In examining specific jurisdiction, the "minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The minimum contacts requirement is satisfied if "the contacts resulted from the

A-1893-19

defendant's purposeful conduct and not the unilateral activities of the plaintiff." Ibid. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)). "In determining whether the defendant's contacts are purposeful, a court must examine the defendant's 'conduct and connection' with the forum state and determine whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Refin. Co., 333 N.J. Super. at 429 (alteration in original) (quoting World-Wide Volkswagen Corp., 444 U.S. at 297).

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." Rippon, 449 N.J. Super. at 359 (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)). We have stated that "discovery is permitted and may be necessary to resolve the jurisdictional issues." Maine v. SeKap, S.A. Greek Coop. Cigarette Mfg. Co., S.A., 392 N.J. Super. 227, 243 (App. Div. 2007). When "a plaintiff presents factual allegations [suggesting] with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, [the] plaintiff's right to conduct jurisdictional discovery

17

should be sustained."  Rippon, 449 N.J. Super. at 359 (quoting Toys "R" Us, 318 F.3d at 456) (alterations in original).

Below, the motion court determined it lacked personal jurisdiction over defendant Kuzovkin because Kuzovkin did not have sufficient minimum contacts with New Jersey to establish specific jurisdiction nor a continuous or substantial connection to New Jersey to establish general jurisdiction.  The court highlighted Kuzovkin's lack of connection with the state:

> Kuzovkin is a Russian national who resides in Russia. There is no evidence that Kuzovkin ever entered the state of New Jersey.  Armada was incorporated in Russia and maintains its principal place of business in Moscow.  The Roitmans, who were previously dismissed from this case, were the nexus between New Jersey and Kuzovkin.  The apartment that was allegedly used for money laundering is also located in Russia.

However, as we conclude in this opinion, the motion court's dismissal of the Roitmans was premature; thus, Kuzovkin's purported connection to New Jersey remains.  The complaint alleges Kuzovkin conspired with New Jersey residents, which necessarily would involve contacts and communications extending into New Jersey.  Indeed, plaintiffs attached a letter from the Russian real estate agency that handled the sale of the Moscow apartment and parking space, which states, "All material terms of the transactions, including the price of real estate objects . . . were determined by the parties on their own."  These

facts, if true, may be sufficient to establish specific jurisdiction over Kuzovkin. See Lebel v. Everglades Marina, Inc., 115 N.J. 317, 324 -30 (1989) (finding sufficient minimum contacts where an out-of-state defendant intentionally "telephoned the [resident-plaintiff] buyer in New Jersey to iron out the details of [a] contract, mailed the contract to the buyer in New Jersey for signing in New Jersey, and received payment from the plaintiff, who defendant knew was a New Jersey resident.").

Additionally, plaintiffs' proposed amended complaint alleges Kuzovkin frequently travelled to the United States, including New Jersey, to publicize Armada and seek capital from the U.S. investment community, and met with brokers in Jersey City. The motion court should have allowed plaintiffs to amend their complaint to cure its jurisdictional defects. These facts too, if true, may be sufficient to establish our courts' jurisdiction over Kuzovkin.

At this stage, however, we do not know the veracity of the facts alleged in plaintiffs' complaint. Discovery is necessary to resolve the disputed jurisdictional issues. We do not express an opinion as to whether personal jurisdiction exists in this case, but rather only conclude that plaintiffs have presented sufficient factual allegations suggesting with reasonable particularity the possible existence of the requisite contacts between Kuzovkin and New

19

Jersey. See Rippon, 449 N.J. Super. at 359. Therefore, the motion court should have permitted jurisdictional discovery. Its decision to dismiss for lack of personal jurisdiction without the benefit of discovery was in error.

### III.

Because we determined the dismissal of plaintiffs' complaint should have been without prejudice, we again note that plaintiffs should have been afforded the opportunity to amend their complaint and attempt to overcome the factual deficiencies that led the motion court to dismiss their complaint for failure to state a claim under Rule 4:6-2(e). However, we also conclude that plaintiffs' unamended complaint stated sufficient factual allegations to survive defendants' motion to dismiss, and the motion court erred in ruling otherwise.

We apply a de novo standard when reviewing a dismissal of a complaint for failure to state a claim under Rule 4:6-2(e). MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super 307, 311 (App. Div. 2018). "[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart, 116 N.J. at 746. "At this preliminary stage of the litigation[,]" we are "not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Ibid. Rather, "we accept as true the facts alleged in the complaint[,]" and afford plaintiffs "every reasonable inference in

their favor." Craig v. Suburban Cablevision, 140 N.J. 623, 625-26 (1995). Nevertheless, we will "dismiss the plaintiff's complaint if it has failed to articulate a legal basis entitling plaintiff to relief." Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005).

To survive a motion to dismiss under Rule 4:6-2(e), a plaintiff need not prove the case, but need only "make allegations which, if proven, would constitute a valid cause of action." Kieffer v. High Point Ins. Co., 422 N.J. Super. 38, 43 (App. Div. 2011) (quoting Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (App. Div. 2001)). On such a motion, plaintiff is entitled to "every reasonable inference of fact." Printing Mart, 116 N.J. at 746 (citing Indep. Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89 (1956)).

A reviewing court must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem. Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). This review should be "at once painstaking and undertaken with a generous and hospitable approach." Ibid.

A motion to dismiss should only be granted in "the rarest of instances." Kieffer, 422 N.J. Super. at 43 (quoting Printing Mart, 116 N.J. at 771-72). Only

21

where "even a generous reading of the allegations does not reveal a legal basis for recovery" should the motion be granted. Ibid. (quoting Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App. Div. 2003)).

On this appeal, plaintiff does not argue the motion court erred in dismissing every count in its complaint for failure to state a claim. Rather, plaintiff only contends the court's dismissal of the following claims against the Roitmans for failure to state a claim were in error: aiding and abetting breach of fiduciary duty (count two), civil conspiracy (count six), and racketing in violation of NJRICO (count seven). Below, we address only the claims that plaintiffs argue the motion court erred in dismissing, though we note plaintiffs may attempt to cure the other dismissed claims when amending their complaint on remand.

## A.

Liability for aiding and abetting "is found in cases where one party 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" State ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 481 (App. Div. 2006) (quoting Judson v. Peoples Bank & Tr. Co., 25 N.J. 17, 29 (1957)). "[T]he mere common plan, design or even express agreement is not enough for liability

in itself, and there must be acts of a tortious character in carrying it into execution." Id. at 483 (citing Restatement (Second) of Torts § 876(b) cmt. d (Am. Law Inst. 1979)). Additionally, there must be proof of the underlying tort committed by the principal. Id. at 484.

A plaintiff proves a claim for aiding and abetting by showing the following:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.
>
> [Id. at 483-84 (quoting Tarr v. Ciasulli, 181 N.J. 70, 84 (2004)).]

Aiding and abetting liability focuses on "whether a defendant knowingly gave substantial assistance to someone engaged in wrongful conduct, not whether the defendant agreed to join the wrongful conduct." Podias v. Mairs, 394 N.J. Super. 338, 353 (App. Div. 2007) (alteration in original) (citations, internal quotations, and emphasis omitted). Determining how much assistance is considered substantial is fact-sensitive. Ibid.

In our view, plaintiffs' complaint states a claim for aiding and abetting against the Roitmans. The facts alleged establish the necessary elements for this

tort:  1) Kuzovkin breached his fiduciary duty to Armada by wrongfully embezzling its assets; 2) the Roitmans were aware of Kuzovkin's embezzlement scheme; and 3) the Roitmans knowingly assisted Kuzovkin carry out his scheme by intentionally misrepresenting the sale price of the Moscow apartment, enabling Kuzovkin to launder the embezzled funds undetected.  As stated in the complaint, the Roitmans' role in coordinating, concealing, facilitating, and receiving embezzled funds amounts to substantial assistance to Kuzovkin's underlying wrongdoing.

B.

Civil conspiracy occurs when "a combination of two or more persons act[] in concert to commit an unlawful act, or to commit a lawful act by unlawful means…." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (quoting Morgan v. Union Cnty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)).  The principal elements of a civil conspiracy are the parties' agreement "to inflict a wrong against or injury upon another, and an overt act that results in damage." Ibid. (quoting Morgan, 268 N.J. Super. at 364). Plaintiffs are "not required to provide direct evidence of the agreement between the conspirators[,]" and may prove the existence of such an agreement through circumstantial evidence. Morgan, 268 N.J. Super. at 364-65.

We likewise find plaintiffs' complaint states a claim for civil conspiracy against defendants.  Plaintiffs allege the Roitmans and Kuzovkin plotted and agreed to forge a sale agreement that deliberately understated the actual price Kuzovkin paid for the apartment to conceal the transfer of embezzled funds.  It further alleges defendants carried out this plan.  Thus, according to the complaint, defendants agreed to secretly move stolen property and successfully did so through a sham transaction.  Thus, the complaint states a viable claim against all defendants for civil conspiracy.

C.

Plaintiffs' complaint alleges defendants violated NJRICO, specifically N.J.S.A. 2C:41-2(c), and asserts a civil claim against them as permitted by N.J.S.A. 2C:41-4(c).  N.J.S.A. 2C:41-2(c) provides:  "It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  To prevail on a civil NJRICO claim under this section, a plaintiff must prove the following five elements:

> (1) the existence of an enterprise; (2) that the enterprise
> engaged in or its activities affected trade or commerce;

(3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity.

[State v. Ball (Ball I), 268 N.J. Super. 72, 99 (App. Div. 1993).]

"'Enterprise' is broadly defined to include all kinds of entities, as well as 'any individual' and any 'group of individuals' who are 'associated in fact although not a legal entity.'" Fairfax Fin. Holdings Ltd. v. S.A.C. Cap. Mgmt., L.L.C., 450 N.J. Super. 1, 38 (App. Div. 2017). An

enterprise . . . must have an "organization." The organization of an enterprise need not feature an ascertainable structure or a structure with a particular configuration. The hallmark of an enterprise's organization consists rather in those kinds of interactions that become necessary when a group, to accomplish its goal, divides among its members the tasks that are necessary to achieve a common purpose. The division of labor and the separation of functions undertaken by the participants serve as the distinguishing marks of the "enterprise" because when a group does so divide and assemble its labors in order to accomplish its criminal purposes, it must necessarily engage in a high degree of planning, cooperation and coordination, and thus, in effect, constitute itself as an "organization."

[State v. Ball (Ball II), 141 N.J. 142, 162 (1995).]

NJRICO defines a racketeering act to include any of the enumerated crimes in N.J.S.A. 2C:41-1(a). Those enumerated crimes include theft, forgery and fraudulent practices, money laundering, and receiving stolen property. A pattern of racketeering activity is defined with two components: (1) at least two incidents of racketeering conduct (predicate acts); and (2) the conduct must have "the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents." N.J.S.A. 2C:41-1(d).

N.J.S.A. 2C:41-2(d) provides: "It shall be unlawful for any person to conspire . . . to violate any of the provisions of this section." To establish an NJRICO conspiracy, a plaintiff must show that (1) "a defendant agreed to participate directly or indirectly in the conduct of the affairs of the enterprise by agreeing to commit, or to aid other members of the conspiracy to commit, at least two racketeering acts[,]" and (2) the defendant "acted knowingly and purposely with knowledge of the unlawful objective of the conspiracy and with the intent to further its unlawful objective." Ball II, 141 N.J. at 180 (quoting Ball I, 268 N.J. Super. at 99-100).

We conclude plaintiffs' complaint properly states a private cause of action against defendants under NJRICO. The complaint alleges Alla Roitman, Yefim

27

Roitman, and Kuzovkin were associated together for the common purpose of laundering Kuzovkin's embezzled funds. It asserts they performed separate functions in this coordinating scheme. The three defendants may encompass an NJRICO "enterprise" and also participants in the enterprise. This enterprise's activities affected trade or commerce in New Jersey by transferring up to $3,700,000 of embezzled funds into the state. Finally, the complaint alleges multiple racketeering acts, including theft of Armada's assets, the creation of a fraudulent sales agreement, money laundering, and receiving stolen property, all done intentionally for a common purpose.

Thus, the complaint establishes the five elements for liability under N.J.S.A. 2C:41-2(c). Likewise, these same facts set forth a claim under N.J.S.A. 2C:41-2(d) for an NJRICO conspiracy.

## D.

Finally, we address plaintiffs' contention that the motion court erred by dismissing Arsenal's claims against defendants on the basis that Arsenal, being a shareholder of Armada, lacked standing. This ruling by the motion court was not in error.

"A corporation is regarded as an entity separate and distinct from its shareholders. It is a principle of corporation law that '[r]egard for the corporate

28

A-1893-19

personality demands that suits to redress corporate injuries which secondarily harm all shareholders alike are brought only by the corporation.'" Strasenburgh v. Straubmuller, 146 N.J. 527, 549 (1996) (citations omitted). New Jersey follows the "American rule," whereby stockholders who suffer injuries to their stock that are the same as all other stockholders "may not recover for the injury to [their] stock alone, but must seek recovery derivatively on behalf of the corporation." Id. at 550 (quoting Cowin v. Bresler, 741 F.2d 410, 414 (D.C. Cir. 1984)).

However, if a particular shareholder suffers an injury distinct from the injuries suffered by other shareholders, a direct suit may be brought under the "special injury" exception. Delray Holding, LLC v. Sofia Design & Dev. at S. Brunswick, LLC, 439 N.J. Super. 502, 510 (App. Div. 2015) (citations omitted). "A special injury exists 'where there is a wrong suffered by [a] plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote.'" Strasenburgh, 146 N.J. at 550 (quoting In re Tri-Star Pictures, Inc., 634 A.2d 319, 330 (Del. 1993)).

Plaintiffs contend their complaint alleges a special injury to Arsenal, as it states Arsenal expended significant resources in removing Kuzovkin from

Armada and attempting to thwart his embezzlement scheme. However, the claims brought by Arsenal in the complaint relate only to Kuzovkin allegedly laundering embezzled funds through an undervalued property purchase. The injury to Arsenal from this transaction derives solely from Arsenal's status as a shareholder of Armada. Moreover, plaintiffs do not claim Arsenal's broader efforts to remove and prosecute Kuzovkin were more strenuous than the actions taken by all of Armada's shareholders collectively.

We therefore agree with the motion court in finding Arsenal did not state a claim upon which relief can be granted in the complaint. However, because we hold plaintiffs, on remand, must be allowed to amend their complaint, plaintiffs have the opportunity to plead further facts that may reveal a true special injury to Arsenal. This is true too for the other claims dismissed by the motion court, yet not reargued by plaintiffs here on appeal.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1893-19